**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Case: 1:21−mc−00091<br>Assigned To : Faruqui, Zia M.<br>Assign. Date : 6/8/2021<br>Description: Misc. |

## MOTION FOR ACCESS TO CERTAIN SEALED COURT RECORDS

Pursuant to Local Criminal Rule 57.6, The New York Times Company ("The Times"), by and through undersigned counsel, respectfully moves this Court, under the First Amendment and common law, for access to the records filed under seal in *In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for Investigation of Violation of [Redacted]*, Case No. 20-sc-3361-ZMF.  Specifically, The Times requests that the Court unseal (1) the Government's Application pursuant to 18 U.S.C. § 2703(d), which the Court granted on January 5, 2021; (2) the Government's ex parte Motion to Modify Order, which the Court granted on March 3, 2021; and (3) all related filings.

The Times's interest in this matter, a statement of relevant facts, and a specific prayer for relief are set forth in the accompanying Memorandum of Points and Authorities.

### REQUEST FOR HEARING

The Times respectfully requests a hearing on this Motion.



RECEIVED
Mail Room

JUN - 9

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Dated:  June 8, 2021                     Respectfully submitted,

                                         BALLARD SPAHR LLP

                                         /s/ *Chad R. Bowman*
                                         Chad R. Bowman (#484150)
                                         Matthew E. Kelley (#1018126)
                                         Maxwell S. Mishkin (#1031356)
                                         1909 K Street, NW, 12th Floor
                                         Washington, DC 20006
                                         Telephone: (202) 661-2200
                                         Fax: (202) 661-2299
                                         bowmanchad@ballardspahr.com
                                         kelleym@ballardspahr.com
                                         mishkinm@ballardspahr.com

                                         Lynn Oberlander (*pro hac vice forthcoming*)
                                         1675 Broadway, 19th Floor
                                         New York, NY 10019-5820
                                         Telephone: (212) 223-0200
                                         Fax: (212) 223-1942
                                         oberlanderl@ballardspahr.com

                                         *Counsel for The New York Times Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2021, I caused true and correct copies of the

foregoing to be served via electronic mail and U.S. Mail on the following:

Tejpal Chawla
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW
Washington, DC 20530
tejpal.chawla@usdoj.gov

Adam Small
Trial Attorney
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
adam.small@usdoj.gov

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CLERK
US DISTRICT & BANKRUPTCY
COURTS FOR DC

2021 JUN -8 P 9: 20

RECEIVED

| |
|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY FOR ACCESS TO CERTAIN SEALED COURT RECORDS |

Case No.

**THE NEW YORK TIMES COMPANY'S MEMORANDUM**
**OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ACCESS**
**TO CERTAIN SEALED COURT RECORDS**

BALLARD SPAHR LLP

Chad R. Bowman (#484150)
Matthew E. Kelley (#1018126)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com
mishkinm@ballardspahr.com

Lynn Oberlander
(*pro hac vice application forthcoming*)
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: (212) 223-0200
Fax: (212) 223-1942
oberlanderl@ballardspahr.com

*Counsel for The New York Times Company*



RECEIVED
Mail Room

JUN - 9 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT BACKGROUND ................................................................................... 2

ARGUMENT ............................................................................................................... 9

I.      THE COURT SHOULD IMMEDIATELY RELEASE THE SEALED RECORDS
        PURSUANT TO THE COMMON LAW RIGHT OF ACCESS ................................... 10

        A.      The Sealed Records Are Judicial Records ........................................... 11

        B.      The *Hubbard* Factors Weigh In Favor Of Access To The Sealed Records ......... 12

II.     THE COURT SHOULD RELEASE THE SEALED RECORDS PURSUANT TO
        THE FIRST AMENDMENT RIGHT OF ACCESS ..................................................... 17

        A.      The First Amendment Right Of Access Applies To The Sealed Records ............ 17

        B.      The Government Cannot Carry Its Heavy Burden To Overcome The First
                Amendment Right of Access ................................................................. 20

CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application by Jason Leopold to Unseal Certain Electronic Surveillance*
    *Applications and Orders*
    (*"In re Leopold"*), No. 13-mc-712-BAH (D.D.C. July 16, 2013) ............................................11

*CNN, Inc. v. FBI,*
    984 F.3d 114 (D.C. Cir. 2021) ..........................................................................................16

*Cobell v. Norton,*
    157 F. Supp. 2d 82 (D.D.C. 2001) ...................................................................................17

*Dhiab v. Trump,*
    852 F.3d 1087 (D.C. Cir. 2017) (Williams, J., concurring) ...............................................17

*EEOC v. Nat'l Children's Ctr.,*
    98 F.3d 1406 (D.C. Cir. 1996) .....................................................................................13, 14

*Globe Newspaper Co. v. Super. Ct.,*
    457 U.S. 596 (1982) ..........................................................................................................20

*Guttenberg v. Emery,*
    26 F. Supp. 3d 88 (D.D.C. 2014) .....................................................................................16

*Hardaway v. D.C. Housing Authority,*
    843 F.3d 973 (D.C. Cir. 2016) ..........................................................................................15

*Johnson v. Greater Se. Cmty. Hosp. Corp.,*
    951 F.2d 1268 (D.C. Cir. 1991) ........................................................................................16

*\*Leopold v. United States,*
    964 F.3d 1121 (D.C. Cir. 2020) .........................................................................11, 12, 13, 18

*Lugosch v. Pyramid Co.,*
    435 F.3d 110 (2d Cir. 2006) ..............................................................................................10

*\*Metlife, Inc. v. Fin. Stability Oversight Council,*
    865 F.3d 661 (D.C. Cir. 2017) (Garland, J.) ..............................................................10, 12, 14

*In re NBC,*
    653 F.2d 609 (D.C. Cir. 1981) ..........................................................................................21

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) ..........................................................................................................14

*In re New York Times Co.,
   585 F. Supp. 2d 83 (D.D.C. 2008) ............................................................................19, 20, 21

Nixon v. Warner Communications, Inc.,
   435 U.S. 589 (1978) ................................................................................................................9, 10

Press-Enter. Co. v. Super. Ct.,
   464 U.S. 501 (1984) ..............................................................................................................19, 20

Press-Enter. Co. v. Super. Ct.,
   478 U.S. 1 (1986) ....................................................................................................17, 18, 19, 20

Richmond Newspapers, Inc. v. Virginia,
   448 U.S. 555 (1980) ..............................................................................................................10, 20

In re Search Warrant for [redacted].
   com, 248 F. Supp. 3d 970 (C.D. Cal. 2017) ..........................................................................14

In re Special Proceedings,
   842 F. Supp. 2d 232 (D.D.C. 2012) ..........................................................................................19

*United States v. Hubbard,
   650 F.2d 293 (D.C. Cir. 1980) ......................................................................................... passim

United States v. Simone,
   14 F.3d 833 (3d Cir. 1994) ..........................................................................................................18

United States v. Suarez,
   880 F.2d 626 (2d Cir. 1989) ........................................................................................................18

Upshaw v. United States,
   754 F. Supp. 2d 24 (D.D.C. 2010) ............................................................................................16

Vanda Pharm., Inc. v. FDA,
   --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 86682 (D.D.C. May 6, 2021) ...........................14

*Washington Post v. Robinson,
   935 F.2d 282 (D.C. Cir. 1991) ..............................................................................13, 19, 20, 21

**Statutes**

18 U.S.C. § 2703(d) ................................................................................................................. passim

18 U.S.C. § 2705(b) ..........................................................................................................................6

**Other Authorities**

28 C.F.R. § 50.10 ................................................................................................................8, 9, 12

## PRELIMINARY STATEMENT

The New York Times Company ("The Times") seeks the court filings relating to two secret and deeply disturbing orders that required its email provider to turn over its journalists' records and gagged its lawyer. The first order, sealed until last week, granted the Government's request to force The Times's email provider to turn over information about four current or former Times journalists in an apparent attempt to uncover confidential source(s) for an April 2017 news report.[1] The second order, also previously sealed, granted the Government's motion to impose an unprecedented and likely unconstitutional prior restraint—a gag order on The Times's newsroom attorney, David McCraw, forbidding him from informing any of his colleagues about the seizure.[2] These orders represent an extraordinary challenge to press freedom, undermining the ability of the press to report truthful information of vital public concern. They appear to have been obtained in contravention of Justice Department regulations and practice. And the reasoning set out in the orders raises important questions about the record and representations put before the Court.

The Orders were made public last week, shortly after the public learned that the Trump Administration had also seized communications records from journalists for CNN and The Washington Post. On the heels of those revelations, and following President Biden's statement that such practices are "simply wrong," the Department of Justice changed its policy and announced it would no longer "seek compulsory legal process in leak investigations to obtain

---

[1] See Order, *In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for investigation of [REDACTED]*, SC No. 20-sc-3361 (D.D.C. Jan. 5, 2021) (the "January 5 Order") (attached hereto as <u>Exhibit A</u>). One of the named reporters, Eric Lichtblau, is no longer with The Times.

[2] See Order, *In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for investigation of [REDACTED]*, SC No. 20-sc-3361 (D.D.C. Mar. 3, 2021) (the "March 3 Order") (attached hereto as <u>Exhibit B</u>).

source information from members of the news media." But the public and The Times deserve to know the bases for these outrageous orders.

   This motion by The Times seeks the court filings relating to these orders—including the government's application seeking to unmask journalistic sources without notice to The Times and the motion for a prior restraint. Pursuant to Local Criminal Rule 57.6, The Times asks this Court to unseal the relevant filings in the matter No. 20-sc-3361. The press and public have a powerful right of access to these records under both the First Amendment and the common law, and the Government cannot possibly carry the heavy burden required to overcome those access rights. The Court should grant this motion and release the requested records without delay.

## RELEVANT BACKGROUND

   As the public is now aware, three weeks before the end of President Donald Trump's term in office, the Justice Department secretly filed an application under the Stored Communications Act (the "Application") for this Court to require Google to turn over several months of email logs dating from 2017 from four current or former Times journalists. The Court granted the Application in the January 5 Order. The January 5 Order also prohibited Google from disclosing its existence for a year—far longer than the 90 days typically provided under the statute upon a showing of cause. After Google apparently balked at that prohibition, the Court granted a motion from the government (the "Ex Parte Motion") and modified its order to allow Google to notify The Times's main newsroom lawyer. But that order, the March 3 Order, prohibited The Times's attorney from telling anyone else about it, including the Times' General Counsel, its Publisher, its Executive Editor or the four targeted journalists. Although the Government has dropped its demands for the reporters' information, and the extraordinary gag on The Times's lawyer has been lifted, the Application, Ex Parte Motion, and any related filings (together, the "Sealed Records") remain under seal and thus hidden from public view.

**The Times's Reporting and the Leak Investigation**

The January 5 Order directed Google to provide records from the email accounts of
Times reporters Matt Appuzzo, Michael S. Schmidt, Adam Goldman, and Mr. Lichtblau between
January 14, 2017 and April 30, 2017. *See* January 5 Order, Attachment A at 1-3. The
circumstances surrounding the order strongly suggest that it is related to particular article,
published on April 22, 2017, that provided a detailed account of then-FBI Director James
Comey's decisions during the 2016 presidential campaign. *See* Matt Appuzzo, Michael S.
Schmidt, Adam Goldman, & Eric Lichtblau, *Comey Tried to Shield the F.B.I. from Politics. Then
He Shaped an Election*, The New York Times (Apr. 22, 2017), https://www.nytimes.com/2017/
04/22/us/politics/james-comey-election.html (the "Comey Article," attached hereto as
Exhibit C). These circumstances include not only the timing of the Comey Article and the
period encompassed by the January 5 Order, but also the fact that the Comey Article was the
only article in 2017 to carry the byline of these four specific reporters.

The Comey Article, "based on interviews with more than 30 current and former law
enforcement, congressional and other government officials," reported that "a document stolen by
Russian hackers" had influenced Comey's decision in the summer of 2016 to personally
announce the decision not to file criminal charges against Democratic nominee Hilary Clinton
for her mishandling of classified information while she was Secretary of State. Comey Article at
2. Citing "several former officials familiar with the document," The Times reported that it was a
memo or email "written by a Democratic operative who expressed confidence that [then-
Attorney General Loretta] Lynch would keep the Clinton investigation from going too far." *Id.*
at 6. The Times reported on Comey's concern that if Lynch announced no criminal charges

3

would be filed against Clinton, Russia would release the document, undermining public

confidence in both the Clinton investigation and the FBI's political neutrality.  *Id.*

The following month, The Washington Post reported more details about the classified

document.[3]  The Post reported that the document purported to be an intercepted Russian

intelligence assessment that analyzed, but did not include, a supposed email exchange between

then-Rep. Debbie Wasserman Schultz, who chaired the Democratic National Committee, and

Leonard Bernardo, an official with the democracy-promoting Open Society Foundations.[4]  The

Post reported that both Schultz and Bernardo said they had never communicated with each other

and had no knowledge of any such assurance by Lynch about the Clinton probe, suggesting the

document was either Russian disinformation or a fabrication.[5]

The public learned of a government leak investigation in January 2020. The Times

published an article by Goldman revealing that the Justice Department had opened an

investigation into who leaked the information about the classified document, with a specific

focus on whether Comey was a source of the leak.  *See* Adam Goldman, *Justice Dept.*

*Investigating Years-Old Leaks and Appears Focused on Comey*, The New York Times (Jan. 16,

2020), https://www.nytimes.com/2020/01/16/us/politics/leak-investigation-james-comey.html

(the "Leak Article," attached hereto as Exhibit D).  The Leak Article noted that it was the second

criminal investigation apparently targeting Comey; an earlier probe into his release through an

---

[3] *See* Karoun Demirjian & Devlin Barrett, *How a dubious Russian document influenced the FBI's handling of the Clinton probe*, The Washington Post (May 24, 2017), https://www.washingtonpost.com/world/national-security/how-a-dubious-russian-document-influenced-the-fbis-handling-of-the-clinton-probe/2017/05/24/f375c07c-3a95-11e7-9e48-c4f199710b69_story.html.

[4] *Id.*

[5] *Id.*

intermediary to The Times of a memo he wrote about a conversation with Trump concluded without criminal charges being filed.  Leak Article at 2.

Citing "people familiar with the inquiry," The Times reported that "hackers working for Dutch intelligence officials obtained the document and provided it to the F.B.I.," and that although it remained classified, "[w]hether the document was fake remains an open question." *Id.* at 1-3.  The Post reported on the investigation the following day, adding that the Russian document had been mentioned in a 2018 report by the Justice Department's Inspector General and—obliquely—Comey's memoir, which had been cleared by FBI reviewers.[6]  This new leak investigation was unusual in that it focused on materials revealed in news reports approximately three years earlier, rather than a more recent disclosure.[7]

### The Application, the January 5 Order, and the March 3 Order

On December 30, 2020, the Justice Department requested an order pursuant to 18 U.S.C. § 2703(d) requiring Google, which administers The Times's email system, to produce "[a]ll records and other information relating to" the email accounts of the four Times journalists between January 14, 2017 and April 30, 2017.  *See* January 5 Order Attachment A at 2.  Though it did not seek the *contents* of communications, the Order requested logs of data identifying the origins, destinations, and timing of all emails sent and received by those accounts.  *Id.* at 2-3.

---

[6] Matt Zapotosky, *Federal prosecutors explore years-old media disclosure, raising fears Trump is using Justice Dept. for political gain*, The Washington Post (Jan. 16, 2020), https://www.washingtonpost.com/national-security/federal-prosecutors-explore-years-old-media-disclosure-raising-fears-trump-is-using-justice-dept-for-political-gain/2020/01/16/6bc56b68-38c2-11ea-bb7b-265f4554af6d_story.html.

[7] After firing Comey in May 2017, which prompted a Special Counsel investigation, Trump frequently criticized Comey as a "leaker," and "suggested without evidence that Mr. Comey should be prosecuted for 'unlawful conduct' and spend years in prison."  Leak Article at 1.

The Government thus sought records that could and were surely intended to be used to identify these reporters' sources.

In the January 5 Order, Magistrate Judge Zia Faruqui granted the Application and also granted the Government's request under 18 U.S.C. § 2705(b) to prohibit Google from disclosing the order to anyone other than its counsel. January 5 Order at 1-2. The Court stated that this restriction was necessary because "there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence." *Id.* at 1. The Order did not describe what evidence supported this determination or explain how any potential target of the investigation would have the ability to destroy or tamper with information in Google's possession.

Although the January 5 Order does not say so explicitly, the circumstances surrounding the order strongly suggest that it is related to the investigation into the leak of information about the Russian intelligence document. The Comey Article was published near the end of the 15-week period in 2017 at issue, and it is the only article during that time frame—and the only one published in 2017—with those four co-authors. In addition, the attachment lists the reporters' email addresses in the order their names appeared in the quadruple byline on the Comey Article, rather than alphabetically.

Google apparently objected to the nondisclosure provision, and in response to the Government's subsequent Ex Parte Motion, the Court issued a revised order on March 3, 2021 to allow Google to disclose the January 5 Order to The Times's Deputy General Counsel, David McCraw. March 3 Order at 1. The Court initially prohibited Mr. McCraw from sharing that information with anyone else at The Times, including the company's General Counsel, its Publisher, its Executive Editor, and the journalists whose communications records were at risk of

being turned over to the Government. *See id.* at 1.  The March 3 Order was later modified to allow Mr. McCraw to disclose it to The Times's outside counsel and a few top executives, though not to the Executive Editor or anyone in its newsroom.

Outside counsel for The Times wrote to the Assistant U.S. Attorney and Department of Justice trial attorney involved in the matter on March 16, March 26, and May 26, urging them to withdraw the Application and ask the Court to vacate the nondisclosure order.[8]  Counsel argued that the January 5 Order was an unconstitutional intrusion into The Times's newsgathering process and that the March 3 Order was not only unnecessary given the extensive publicity about the leak investigation but also unconstitutional as a prior restraint on speech about an issue of public concern.[9]

On the evening of June 4, counsel for the Government notified counsel for The Times that the Court had granted the Government's request to quash the January 5 Order and the March 3 Order, thus freeing Mr. McCraw to tell the four reporters, Times news executives, and the public about these extraordinary proceedings.[10]  On the same day that it made that request to the Court, the Justice Department notified the four reporters that it had, in 2020, seized their phone records from several months in 2017 and hinted at the still-secret Section 2703(d) action, noting it had sought a court order for their email logs but that none of those records had been obtained.[11] The Times and other news organizations strongly condemned both the attempt to seize reporters'

---

[8] The Times posted online copies of these letters.  *See* https://int.nyt.com/data/documenttools/gag-order-nyt-emails-fight/34c4f238d4010147/full.pdf.

[9] *Id.* at Letter from T. Boutrous & A. Southwell to T. Chawla & A. Small (Mar. 26, 2021) at 1-2.

[10] Charlie Savage and Katie Benner, *U.S. Waged Secret Legal Battle to Obtain Emails of 4 Times Reporters,* The New York Times (June 4, 2021), https://www.nytimes.com/2021/06/04/us/politics/times-reporter-emails-gag-order-trump-google.html.

[11] *Id.*

email logs and the fact that the litigation about those records took place in secret.  Mr. McCraw observed that the entire episode was unprecedented, noting that the Government had never seized Times journalists' phone records without notifying the newspaper first, nor had The Times ever been subject to a gag order regarding a leak investigation.[12]

The surreptitious seizure of The Times's reporters' phone records and attempt to obtain their email logs was not an isolated incident.  Recently, the Justice Department notified the Post that it had secretly seized phone data of three of its reporters and told CNN that it had secretly seized the phone and email logs of Pentagon correspondent Barbara Starr.[13]  Both of those seizures also sought records from the early months of the Trump Administration.

The Justice Department's own regulations, codified at 28 C.F.R. § 50.10, state that orders seizing a journalist's communications records are "extraordinary measures" that require stringent oversight.  The regulations recognize that "[b]ecause freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news," it is necessary to balance law enforcement interests with the public interest in "safeguarding the essential role of the free press in fostering government accountability and an open society."  *Id.* § 50.10(a)(1)-(2). Any request requires the approval of the Attorney General or his designee, and the regulations state that in most cases news organizations should be notified before a seizure application is

---

[12] *Id.*  Times Executive Editor Dean Baquet said that the Government's secret pursuit of the reporters' records "profoundly undermines press freedom."  *Id.*  Post Executive Editor Sally Buzbee was quoted saying the Government's actions "severely hinder the ability of news organizations to uncover information of clear public interest" and called for a "full accounting of the chain of events."  Matt Zapotosky, *Amid Controversy, Justice Dept. says it won't seek to compel journalists to give up source information*, The Washington Post (June 5, 2021), https://www.washingtonpost.com/national-security/new-york-times-justice-department/2021/06/05/0fc66026-c61d-11eb-93f5-ee9558eecf4b_story.html.

[13] *See* Savage & Benner, *supra* n.10.

made, including through orders under Section 2703(d).  *Id.* § 50.10(a)(3).[14]  The Justice

Department told counsel for The Times that such approval was granted in this case.[15]

Amid the outcry over these prosecutorial intrusions into the newsgathering process, the

Justice Department has announced changes to its policies.  Following the revelations by the Post

and CNN, President Biden said that seizing reporters' records was "simply, simply wrong" and

vowed to "not let that happen."[16]  And after The Times reported on this application and gag

order, the Justice Department announced that, consistent with the President's comments, it had

changed its policy and "will not seek compulsory legal process in leak investigations to obtain

source information from members of the news media doing their jobs."[17]

To date, only the January 5 Order, its attachment, and the March 3 Order have been made

public.  The Times now asks this Court to unseal the Application, the Ex Parte Motion, and

related filings to allow the public to learn more about this secret attempt to track down reporters'

sources.

## ARGUMENT

The press and public have a right of access to judicial records, including these Sealed

Records, arising from both the common law and the First Amendment.  In *Nixon v. Warner*

*Communications, Inc.*, the Supreme Court recognized a common law right "to inspect and copy

---

[14] *See also* Att'y Gen. Eric Holder, Memorandum to all Department Employees on Updated
Policy Regarding Obtaining Information from, or Records of, Members of the News Media; and
Regarding Questioning, Arresting, or Charging Member[s] of the News Media, at 1 (Jan. 14,
2015), *available at* https://fas.org/sgp/othergov/doj-media-rev.pdf.

[15] Charlie Savage and Katie Benner, *White House Disavows Knowledge of Gag Order on
Times Leaders in Leak Inquiry*, The New York Times (June 5, 2021),
https://www.nytimes.com/2021/06/05/us/politics/biden-gag-order-new-york-times-leak.html.

[16] *Id.*

[17] *Id.*

. . . judicial records and documents." 435 U.S. 589, 597 (1978).  Two years later, in *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court held that the First Amendment's protections for freedom of speech, freedom of the press, and the right to petition necessarily carry with them an implied right of access to judicial documents and proceedings.  448 U.S. 555 (1980).  Over the decades since, these rights of access to court records and proceedings have become established as "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.).

These rights of access plainly apply to the Sealed Records, and the Government cannot possibly carry the heavy burden required keep these records secret.  Moreover, because the right of access is a right of *contemporaneous* access, the Court should release the Sealed Records without delay.  *See, e.g.*, *Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of *immediate* access where a right to access is found.") (emphasis added).

## I.    THE COURT SHOULD IMMEDIATELY RELEASE THE SEALED RECORDS PURSUANT TO THE COMMON LAW RIGHT OF ACCESS

Under the controlling case law of this Circuit, the Court should immediately release the Sealed Records pursuant to the common law right of access.  The common law access right requires courts to conduct a two-stage analysis.  First, courts determine whether the records at issue are "judicial records," to which there is a "strong presumption" in favor of access. *Metlife*, 865 F.3d at 665-67.  If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to conclude whether the presumption of access has been rebutted.  650 F.2d 293 (D.C. Cir. 1980).  Here, the Sealed Records – one containing the Government's arguments for an extraordinary order authorizing surveillance of American journalists, the other

containing its arguments for an unprecedented order restraining the speech of a newsroom

attorney – are plainly judicial records, and the *Hubbard* factors squarely favor public access.

### A.        The Sealed Records Are Judicial Records

It is beyond dispute that the Sealed Records are "judicial records" to which the public has

a presumptive right of access under the common law. The Application is a request for an order

under Section 2703(d) of the Stored Communications Act, and in *Leopold v. United States*, the

D.C. Circuit expressly held that "applications for such orders and their supporting documents

(e.g., accompanying affidavits)" are judicial records for purposes of the common law right of

access. 964 F.3d 1121, 1128 (D.C. Cir. 2020) (Garland, J.).[18]

The Ex Parte Motion is also a judicial record. As discussed above, in the Ex Parte

Motion the Government sought permission to impose an onerous and highly unusual gag order

on a single member of a news organization, The Times's Deputy General Counsel David

McCraw. Such a document is a judicial record – even though it was filed under seal – because it

was "filed before the district court's decision and [was] intended to influence it," and because

---

[18] Though the *Leopold* litigation remains ongoing, this action should not be consolidated into
that lawsuit, which concerns the unsealing of "historical" Stored Communications Act request
records. *See generally In re Application by Jason Leopold to Unseal Certain Electronic
Surveillance Applications and Orders* (*"In re Leopold"*), No. 13-mc-712-BAH (D.D.C. July 16,
2013). As Chief Judge Howell acknowledged in a May 25 Minute Order in that matter, "in the
almost four months since the Court's February 9, 2021 Memorandum Opinion and Order
resolving the parties' dispute over the scope of the redactions to be applied by the government
and directing the government to commence such redaction and unsealing, no unsealing motions
that would permit the unsealing of sealed matters have been submitted." As such, consolidation
of this case into the *Leopold* lawsuit would likely result in unjustifiable delay of The Times's
motion. *See, e.g.*, Dec. 10, 2020 Mem. Op. & Order, *In re Leopold*, Dkt. 7 (acknowledging
likely delay through consolidation).

Moreover, unlike the petitioners in *Leopold*, The Times is an interested party in the
records it seeks to unseal – *i.e.*, it seeks only discrete applications relating to the communications
of its own employees. This unique and urgent need for access to the Sealed Records at issue in
this case thus counsels in favor of an independent and immediate determination of this motion.

"an appellate court reviewing the district court's decision . . . would want to examine [the filing] to determine whether the court correctly" reached its decision. *Metlife*, 865 F.3d at 668-69; *see also Leopold*, 964 F.3d at 1128 (filings are judicial records when "they are intended to influence the court and the court makes decisions about them") (alteration and internal marks omitted).

The Application and the Ex Parte Motion therefore are both "judicial records" to which the public has a "strong presumption" of access pursuant to the common law.

**B.       The *Hubbard* Factors Weigh In Favor Of Access To The Sealed Records**

Because the public has a presumptive right of access to the Sealed Records, the Court should release them unless the Government can rebut that presumption through the six-factor *Hubbard* test.  Those factors are:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife*, 865 F.3d at 665 (citations and internal marks omitted).  Under this test, the Government cannot possibly rebut the strong presumption of access to the Sealed Records.  To the contrary, the *Hubbard* factors conclusively favor granting this motion and releasing the Sealed Records.

**Factor 1 – The Need for Public Access:** The public has an overwhelming need for access to the Sealed Records.  As the Department of Justice itself has long acknowledged, using tools including Section 2703(d) orders "to seek information from, or records of, non-consenting members of the news media [are] extraordinary measures, not standard investigatory practices." 28 C.F.R. § 50.10(a)(3).  The public thus has an equally extraordinary interest in understanding how the Government justified the use of that tool in this instance – a justification that would be found, if it exists, in the Application.  *See MetLife*, 865 F.3d at 676 (noting that "a fundamental

norm of our judicial system" is "that judges' decisions *and their rationales* must be available to the public") (emphasis added); *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (acknowledging the "need for public access in those instances where the documents at issue are specifically referred to in the trial judge's public decision") (alterations and internal marks omitted).

Moreover, the January 5 Order found "reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence," January 5 Order at 1, even though the Government's investigation had been highly publicized for more than a year.[19] *See, e.g.*, Leak Article at 1.  The public thus has a powerful interest in learning what the Government included (or chose not to include) in its Application that would lead the Court to have reached such a result. *See, e.g., Leopold*, 964 F.3d at 1127 ("'Access to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally. . . .  Like the public trial guarantee of the Sixth Amendment, the right [of access] serves to safeguard against any attempt to employ our courts as instruments of persecution, to promote the search for truth, and to assure confidence in judicial remedies.'") (quoting *Hubbard*, 650 F.2d at 314-15 & n.79); *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (noting the public's interest in access to court records as a means of "monitoring prosecutorial . . . misconduct").

The need for public access to the Ex Parte Motion is equally significant.  In that filing, the Government sought to impose on The Times's newsroom counsel a prior restraint – "the

---

[19] Further, the information sought was four years old and fully within Google's control. There was no way that The Times or its journalists could "tamper" with it.

most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also, e.g.*, *In re Search Warrant for [redacted]@yahoo.com*, 248 F. Supp. 3d 970, 980 (C.D. Cal. 2017) (noting that "[c]ourts considering the issue have almost uniformly found that [such orders], are prior restraints and / or content-based restrictions"). Because the Court granted that request in the March 3 Order, the public has a powerful interest in learning the basis for the Court's decision, which was presumably set out in the Ex Parte Motion. *See MetLife*, 865 F.3d at 675; *Nat'l Children's Ctr.*, 98 F.3d at 1409. The first *Hubbard* factor thus supports disclosure of both of the Sealed Records.

**Factor 2 – The Extent of Previous Public Access:** Because there has been no previous access to either of the Sealed Records, the second *Hubbard* factor is neutral here. *See, e.g.*, *Vanda Pharm., Inc. v. FDA*, --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 86682, at *20 (D.D.C. May 6, 2021) ("the second *Hubbard* factor is neutral where there has been no previous access") (internal marks omitted).

**Factor 3 – The Existence and Identity of An Objector:** It remains to be seen whether, having considered The Times's arguments, the Government will still object to disclosure of the Sealed Records. But because Factor 3 is the only *Hubbard* factor that could even arguably weigh against disclosure, if the Government does choose to object, on balance, the *Hubbard* factors will not rebut the strong presumption of access under the common law.

**Factor 4 – The Strength of Any Asserted Privacy or Property Rights:** On this record, the Government cannot possibly identify a "property" or "privacy" interest in continuing to withhold the Sealed Records from the public. In *Hubbard*, for example, the D.C. Circuit noted that the Church of Scientology had property and privacy interests in "documents [that] were

seized from non-public areas of Church premises." 650 F.2d at 320. Similarly, in *Hardaway v. D.C. Housing Authority*, the D.C. Circuit recognized an individual's "strong privacy interest in keeping the details of her disability confidential." 843 F.3d 973, 980 (D.C. Cir. 2016). Any comparable privacy interest in this matter would therefore belong to The Times or its journalist employees, as the "target" of the surveillance authorized by the January 5 Order, or to Mr. McCraw, as the individual named in the March 3 Order. Here, however, The Times and Mr. McCraw are affirmatively seeking the release of these records. Factor 4 thus weighs in favor of disclosing the Sealed Records.

**Factor 5 – The Possibility of Prejudice:** Given the Government's current posture in this matter, it is implausible that any prejudice could arise from releasing the Sealed Records. The January 5 Order that resulted from the Application has been quashed. The March 3 Order has been lifted. And the Department of Justice, at the insistence of the President himself, now pledges that it "will not seek compulsory legal process in leak investigations to obtain source information from members of the news media doing their jobs." *See id.* (quoting Department of Justice spokesperson Anthony Coley).

Indeed, as The Times made clear in its correspondence with the Department of Justice, there was *never* a possibility of prejudice from disclosure of this surveillance effort. *See* Letter from T. Boutrous & A. Southwell to T. Chawla & A. Small (Mar. 16, 2021) at 5, *available at* https://int.nyt.com/data/documenttools/gag-order-nyt-emails-fight/34c4f238d4010147/full.pdf ("Any target of the investigation has therefore known about it for over a year. As such, there is no reasonable basis to believe the investigation would be seriously jeopardized by the fact of the Government's application being known. . . . Even if the investigation to which [the Application] pertains is in some way different from the investigation revealed in the January 2020 reporting,

years of intense media attention have long put any potential suspect on notice that a criminal investigation was likely."). On these facts, the Government has no basis to assert any risk of prejudice from disclosing the Sealed Records. Factor 5 therefore supports disclosure.

**Factor 6 – The Purpose of the Records at Issue:** The Application was submitted for the purpose of persuading this Court to authorize surveillance of The Times's journalists, and it succeeded in that purpose. The Ex Parte Motion was submitted for the purpose of persuading this Court to impose a gag order on The Times's Deputy General Counsel, and it achieved that purpose as well. It is therefore clear that both of the Sealed Records were introduced for the purpose of influencing the court's decision-making process, and as the D.C. Circuit recently clarified, "When a sealed document is considered as part of judicial decisionmaking, the sixth factor will oftentimes carry great weight" in favor of disclosure. *See CNN, Inc. v. FBI*, 984 F.3d 114, 120 (D.C. Cir. 2021). Factor 6 thus supports releasing the Sealed Records as well.

To the extent the Government objects to release, it bears the burden of demonstrating that the *Hubbard* factors rebut the strong presumption in favor of public access to judicial records. *See Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991) (the party opposing access must "come forward with specific reasons why the record, or any part thereof, should remain under seal"). Indeed, courts have not hesitated to grant access based on the objector's failure to carry this heavy burden. *See, e.g., Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014) ("[b]ased on its consideration of all the *Hubbard* factors, the Court determines that plaintiffs have not met their burden to show that either the entire case or the [specific information at issue] should remain under seal"); *Upshaw v. United States*, 754 F. Supp. 2d 24, 27-28 (D.D.C. 2010) ("Plaintiff seeks an order sealing the entirety of this action, including the Complaint and the Memorandum Opinion, . . . [T]he Court concludes that the balance of the

*Hubbard* factors is decisively against granting [such] breathtakingly broad relief"); *Cobell v. Norton*, 157 F. Supp. 2d 82, 92 (D.D.C. 2001) ("whatever privacy or confidentiality interests Treasury may articulate in favor of keeping sealed the documents reflecting its internal disciplinary processes, those interests are easily outweighed by the strong presumption in favor of public access").

The Court should reach the same result here.  Out of the six *Hubbard* factors, four favor disclosure, one is neutral, and one remains to be determined.  Based on that scoresheet, the Government falls far short of rebutting the strong presumption of disclosure.  The Court should release the Sealed Records accordingly.

## II.   THE COURT SHOULD RELEASE THE SEALED RECORDS PURSUANT TO THE FIRST AMENDMENT RIGHT OF ACCESS

The First Amendment right of access to court records provides an independent, alternative, and even more powerful basis for releasing the Sealed Records.  Like the common law access test, the First Amendment right of access requires courts to conduct a two-stage analysis.  "First the court must determine whether a qualified First Amendment right of public access exists.  If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring) (internal citation and marks omitted).  Following this process, it is clear that the First Amendment right of access applies to the Sealed Records and that the Government cannot carry the heavy burden required to overcome that right.

### A.   The First Amendment Right Of Access Applies To The Sealed Records

The Supreme Court has long relied on the "experience and logic" test to determine where the constitutional access right applies to records or a proceeding.  *Press-Enter. Co. v. Super. Ct.*

("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986).  Under this test, the constitutional right of access

attaches if "the place and process have historically been open to the press and general public"

and if access "plays a significant positive role in the function of the particular process."  *Id.* at 8.

The D.C. Circuit recently declined to answer whether the First Amendment access right

applies specifically to Section 2703(d) applications, *see Leopold*, 964 F.3d at 1127, but if this

Court were to address the issue, it should find that the First Amendment right applies to the

Sealed Records.  As an initial matter, the Court can effectively set aside the "experience" prong

because the Stored Communications Act dates back only to 1986, and courts have generally held

that the prong is inapt for such newer procedures and records.  *See id.* at 1129 (noting that "[t]he

relevant statute is the Electronic Communications Privacy Act of 1986 (ECPA)," and that "[t]he

Stored Communications Act is Title II of the ECPA"); *see also Press-Enterprise II*, 478 U.S. at

10 n.3 (holding that the First Amendment right attached to pretrial proceedings, even though they

had "no historical counterpart," so long as "importance of the . . . proceeding" was clear); *United

States v. Simone*, 14 F.3d 833, 838 (3d Cir. 1994) (finding right of access to post-trial

examinations of jury misconduct even though no history of the practice could be found before

1980 by "rely[ing] primarily on the 'logic' prong of the test"); *United States v. Suarez*, 880 F.2d

626, 631 (2d Cir. 1989) (holding that First Amendment access right applies to Criminal Justice

Act records, even though "the CJA itself is, in terms of 'tradition,' a fairly recent development,

having been enacted in 1964," because of "the public's strong interest" in the information at

issue and "[b]ecause there is no persuasive reason to ignore the presumption of openness that

applies to documents submitted in connection with a criminal proceeding").

Properly focusing on the logic prong, this Court should conclude that the First

Amendment right of access applies to the Sealed Records.  As then-Chief Judge Royce C.

18

Lamberth observed in response to a prior motion filed by The Times for access to search warrants, warrant applications, supporting affidavits, and related records concerning the Amerithrax investigation, "[t]he Court starts with the general proposition that 'the First Amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed.'" *In re New York Times Co.*, 585 F. Supp. 2d 83, 89-90 (D.D.C. 2008) (quoting *Robinson*, 935 F.2d at 287).[20] "The rationale for this proposition is that openness of judicial processes and documents 'gives assurance that established procedures are being followed and that deviations will become known' and corrected." *Id.* at 90 (quoting *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 508 (1984)). Addressing the analogous issue of access to warrants and warrant materials specifically, the Court noted that "openness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage," because those materials "are often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures." *Id.* Moreover, "[p]ublic access to [these] materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Id.*

Each of those arguments applies with particular force here. This investigation, leading to a breathtaking subpoena aimed at unmasking journalists' sources, illustrates of the need for public access and oversight of the tremendous power of prosecutors. *Cf. Press-Enterprise II*, 478 U.S. at 12-13 (public access is especially important in the absence of a jury, which otherwise would provide "a safeguard against the corrupt or overzealous prosecutor"); *In re Special*

---

[20] *In re New York Times* is a particularly apt comparison because there, as here, the investigation at issue was not officially closed but was effectively dormant. *See* 585 F. Supp. 2d at 88 n.7.

*Proceedings*, 842 F. Supp. 2d 232, 244 (D.D.C. 2012) (public access protects "against future prosecutorial misconduct," which is a "consideration[] the courts have consistently found weigh[s] heavily in favor of the right of access"). Because the logic of access is compelling, the Court should find that the First Amendment right of access applies to the Sealed Records.

### B.   The Government Cannot Carry Its Heavy Burden To Overcome The First Amendment Right of Access

To overcome the public's First Amendment right of access, a party opposing disclosure must show that keeping the records secret serves a compelling governmental interest and is narrowly tailored to serve that interest. *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606-07 (1982); *In re New York Times*, 585 F. Supp. 2d at 91. In particular, the party opposing access must demonstrate that:

1.   There is a substantial probability of prejudice to a compelling interest if the right is not limited. *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enterprise I*, 464 U.S. at 510; *Richmond Newspapers*, 448 U.S. at 580-81.

2.   There is no alternative to a limitation of the access right that will adequately protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 289-90.

3.   Restricting access will effectively protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

4.   The restriction on access is narrowly tailored. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.

The Government cannot possibly make this showing, particularly in light of the amount of publicity this investigation already has received. The D.C. Circuit has expressly recognized, in the context of the First Amendment right of access, that the release of information already publicized by the news media cannot threaten an ongoing investigation enough to justify continued sealing of records. *See Robinson*, 935 F.2d at 291-92 (government did not meet its burden to justify sealing plea agreement to protect ongoing investigation when plea already had

been reported by news media).  Moreover, even if the Government could assert that unsealing

these records creates some potential risk of harm – and by all appearances it cannot – it also must

demonstrate that alternative measures, such as redaction, cannot adequately redress that risk.  *Id.*

at 290; *cf. In re NBC*, 653 F.2d 609, 613-17 (D.C. Cir. 1981) (applying this requirement to

common law access test).[21]

In sum, based on the current public record, the Government cannot possibly articulate a

sufficiently compelling interest to overcome the First Amendment right of access and justify

continuing to withhold the Sealed Records from The Times and the public.

## **CONCLUSION**

For all of the foregoing reasons, The Times respectfully requests that this Court grant its

motion and enter an order immediately unsealing the Application, the Ex Parte Motion, and

related filings.

Dated:  June 8, 2021                    Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Matthew E. Kelley (#1018126)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com
mishkinm@ballardspahr.com

---

[21] *See, e.g.*, *In re New York Times Co.*, 585 F. Supp. 2d at 91 ("protecting the confidentiality of informants can be accomplished by means less restrictive than prohibiting access to warrant materials altogether," namely "by simply redacting the identity and personal identifiers of the informants").

Lynn Oberlander
(*pro hac vice application forthcoming*)
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (212) 223-0200 | Fax: (212) 223-1942
oberlanderl@ballardspahr.com

*Counsel for The New York Times Company*