**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF THE NEW YORK TIMES COMPANY FOR ACCESS TO CERTAIN SEALED COURT RECORDS** | **No. 1:21-mc-91 (JEB)**<br><br>**Attachments Filed Under Seal** |

**GOVERNMENT'S MOTION TO PARTIALLY UNSEAL ITS
DECEMBER 22, 2020 APPLICATION FILED PURSUANT
TO 18 U.S.C. §§ 2703(d) AND 2705(b) AND RESPONSE TO
APPLICATION BY THE NEW YORK TIMES COMPANY**

The United States of America, by and through the undersigned counsel, respectfully submits this motion to unseal in part its application for a court order submitted on December 22, 2020 pursuant to 18 U.S.C. §§ 2703(d) and 2705(b) (the "Application"), with appropriate redactions.  *See* Dkt. No. 1, *In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for Investigation of Violation of 18 U.S.C. §§ 641 and 793* ("*In re Application*"), No. 20-sc-3361 (ZMF).  The government's proposed redactions to the Application, including a version with red boxes indicating proposed redactions and a version with the redactions applied, are included herein as Attachments A and B, which are being filed under seal (as the Application itself remains under seal).  Further, this motion responds to the June 8, 2021 application submitted by *The New York Times* (the "*Times*") before this Court to unseal the Application and related filings in full.

## BACKGROUND

In April 2017, the *Times* published an article (the "Article") containing classified information that had not been approved for release.  After the Article's publication, the Department of Justice (the "Department") received a crime report from an entity within the United States

Intelligence Community, and in August 2017, the Federal Bureau of Investigation ("FBI") opened a criminal investigation.

In the course of that investigation, on December 22, 2020, the government submitted the Application pursuant to 18 U.S.C. § 2703(d) for an order directing Google, LLC ("Google") to produce certain non-content email records pertaining to the four *Times* reporters who authored the Article.  The Application further requested an order pursuant to 18 U.S.C. § 2705(b) prohibiting Google from notifying any person of the existence of the Application or resulting order unless otherwise permitted by the Court, except for the purpose of receiving legal advice.  On January 5, 2021, Magistrate Judge Zia M. Faruqui issued an order (the "Order") granting the government's Application in the matter docketed as No. 20-sc-3361.

Following a request from counsel for Google, the government subsequently agreed to request that the Court modify the nondisclosure provision of the Order to permit Google to share the Order with in-house counsel for the *Times* under the same nondisclosure provisions.  Following further discussions with counsel for the *Times*, the government further agreed to request that the Court modify the Order to permit the *Times*'s in-house counsel to share the Order with outside counsel and other *Times* executives, again subject to the same nondisclosure provisions.  *See* Dkt. Nos. 3-8, *In re Application*.  After seeking several extensions for Google's deadline to produce responsive documents, the government moved on June 2, 2021 to withdraw the Application and to quash the Order and all nondisclosure orders, *see* Dkt. No. 16, *In re Application*, and the Court granted the government's motion on June 4, 2021, *see* Dkt. No. 17, *In re Application*.  Pursuant to 28 C.F.R. § 50.10, the government also notified the four *Times* reporters on June 2, 2021, that the government had obtained the reporters' telephone toll records pursuant to legal process and that a court had authorized an order to obtain non-content communication records for their email

accounts, but that no records were obtained.  On June 5, 2021, the Department announced that it will no longer seek compulsory legal process in investigations into unauthorized disclosures of information from members of the news media engaged in newsgathering activities.

On June 8, 2021, the *Times* filed the instant Motion for Access to Certain Sealed Court Records pursuant to Local Rule 57.6, in which the *Times* has requested that this Court unseal the government's Application and all related filings.[1]  On June 28, 2021, the government filed a motion before Magistrate Judge Faruqui to unseal the *In re Application* docket and all prior docket entries, subject to limited redactions and with the exception of the Application.  Dkt. No. 18, *In re Application.*  Magistrate Judge Faruqui granted that motion on June 30, 2021.

With the *Times*'s consent, the government has requested and received several orders from this Court extending its deadline to respond to the *Times*'s June 8 motion.  In its August 10, 2021 consent motion requesting a continuance until September 10, 2021, the government noted that it had "represented to [the *Times*'s] counsel that, by September 10, 2021, the government intends to file a motion to unseal a redacted version of the Application," and that the *Times* consented to the requested continuance "[i]n light of that representation."

### REASONS FOR PARTIAL UNSEALING

The *In re Application* docket and filings were originally under seal in their entirety because the Application and Order related to an ongoing criminal investigation.  On June 28, 2021,

---

[1] The *Times* has also requested that the Court unseal "the Government's ex parte Motion to Modify Order, which the Court granted on March 3, 2021," Mot. at 1, which the *Times* describes as requesting a modification of the Court's prior nondisclosure order "to allow Google to notify The Times's main newsroom lawyer" about the Order, Mot. at 2.  However, at the government's request, Magistrate Judge Faruqui has already unsealed all the docket entries that relate to nondisclosure provisions directed to Google and/or the *Times*.  *See* Dkt. Nos. 3-17, *In re Application*.  The *Times*'s description of the "Ex Parte Motion" appears to refer to the motion filed by the government on February 25, 2021, which has been unsealed as Dkt. No. 3.

notwithstanding the fact that the investigation was still ongoing, the government sought to unseal the docket, Order, and subsequent filings due to a number of unique factors, including the government's discussions with the *Times*'s counsel, the government's withdrawal of the Application and its provision of notice to the *Times*'s reporters, and the Department's change in policy regarding the use of compulsory legal process pertaining to members of the news media. Further, on September 1, 2021, the Department's National Security Division, at the Direction of the Attorney General, released a chronology regarding events related to the Department's approval pursuant to 28 C.F.R. § 50.10 of the use of legal process to obtain the *Times* reporters' records. *See* Letter from Mark Lesko, Acting Assistant Attorney General, to Members of the News Media Dialogue Group (Sept. 1, 2021), https://www.justice.gov/opa/page/file/1429746/download.[2]

Since that time, the FBI has closed its investigation in this matter. In light of the investigation having been closed without charges and other public disclosures to date, the government believes that significant portions of the Application can now be unsealed. The portions of the Application which the government seeks to unseal include, inter alia, descriptions of the relevant legal background and the Court's jurisdiction (¶¶ 1-4); descriptions of the relevant criminal statutes giving rise to the investigation (¶¶ 5-7); descriptions of and references to the Article published by the *Times* that gave rise to the investigation and the four reporters' role as authors (¶¶ 10, 37); a description of the process leading up to the FBI's opening of its investigation (¶ 11); and the means by which investigators identified the reporters' email accounts (¶ 39 & n.7). The government further seeks to unseal in its entirety—except for a fraction of a line of text—the portion of the Application requesting a nondisclosure order pursuant to 18 U.S.C. § 2705(b), which

---

[2] This letter also included chronologies related to the use of legal process to obtain records pertaining to a CNN journalist and three *Washington Post* journalists.

includes the full basis for that request (¶¶ 45-50).

Other portions of the Application, however, must remain under seal to protect compelling third-party privacy and reputational interests, as well as significant law enforcement interests. As the D.C. Circuit has explained, courts evaluating whether the common-law right of access supports unsealing judicial records must assess, among other factors, "[t]he strength of any property and privacy interests asserted" and "the possibility of prejudice to those opposing disclosure"—the latter of which may include prejudice to law enforcement interests when disclosure is opposed by the government. *In re Leopold*, 964 F.3d 1121, 1131, 1133 (D.C. Cir. 2020); *see United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).[3] The government submits that its proposed redactions in Attachments A and B protect those interests.

First, the witnesses and uncharged subjects of the investigation have significant privacy, reputational, and due process interests that weigh heavily against further disclosure of the Application. As Chief Judge Howell has explained, there are "three distinct, yet overlapping individual interests" that could be jeopardized by disclosure of facts contained within search warrant materials:

> First, the mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest. Second, the substance of the allegations of criminal conduct may reveal details about otherwise private activities that significantly implicate an individual's privacy interests… Finally, where, as here, a criminal investigation does not result in an indictment or other prosecution, a due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations.

---

[3] The six factors described in the "*Hubbard* test" are: (1) The need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *Leopold*, 964 F.3d at 1131. With regard to the first factor, the government submits that any need for public access here is satisfied by release of the portions of the Application which the government seeks to unseal.

*Application of WP Co. LLC* ("*WP Co.*"), 201 F. Supp. 3d 109, 122 (D.D.C. 2016).

The D.C. Circuit has likewise explained in the context of the Freedom of Information Act that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," including because of "the stigma potentially associated with law enforcement investigations" and the potential of those individuals to become "the subjects of rumor and innuendo, possibly resulting in serious damage to their reputations." *Stern v. Federal Bureau of Investigation*, 737 F.2d 84 (D.C. Cir. 1984) (internal quotations omitted); *see also, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice* ("*CREW*"), 854 F.3d 675, 682 (D.C. Cir. 2017) ("individuals have an obvious privacy interest . . . in keeping secret the fact that they were subjects of a law enforcement investigation," and this "privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation"); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981) ("There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation." (internal quotations omitted)).

The Application in this instance contains particularly detailed information about the government's investigation and specific pieces of evidence the government obtained from a number of sources.  The government has therefore marked for redaction portions of the Application that contain detailed information about subjects of the investigation—including information that could identify them, the extent of their cooperation with law enforcement, and their private activities.  These materials include non-public information that the government obtained through witness interviews, court-authorized search warrants, and other legal process.  Public release of this information would not only invade the subjects' "obvious privacy interest . . . in keeping secret

the fact that they were subjects of a law enforcement investigation," *CREW*, 854 F.3d at 682, but would also gratuitously "reveal details about otherwise private activities," *WP Co.*, 201 F. Supp. 3d at 122.  Furthermore, because the subjects have not been charged with any crimes, release of this information would harm their due process interests against "being accused of a crime without being provided a forum in which to refute the government's accusations."  *Id.*

Second, the government has compelling law enforcement interests in maintaining portions of the Application under seal.  Although this investigation is now closed, unsealing portions of the Application that describe subjects' and witnesses' statements to law enforcement would jeopardize the government's ability to obtain truthful information from subjects or witnesses in future investigations.  An expectation from subjects and witnesses that statements they provide to law enforcement will eventually be made public—even if no charges are brought, and without the safeguards of a trial subject to ordinary rules of evidence—would likely chill potential cooperation. "For obvious reasons, ensuring that investigators are able obtain information and assistance from individuals with direct knowledge of criminal conduct is critical to law enforcement efforts and the government's compelling interest in protecting the public."  *WP Co.*, 201 F. Supp. 3d at 127; *see also, e.g.*, *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979) ("if preindictment proceedings were made public, many witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony").

Third, other portions of the Application must remain under seal to protect against disclosure of the precise nature of the classified information that was disclosed in the *Times*'s Article.  Those portions include text that identifies with specificity the classified information contained in the Article, as well as text that describes the classification designation of the information at issue.  *See, e.g.*, *CIA v. Sims*, 471 U.S. 159, 175 (1985) ("[t]he government has a

7

compelling interest in protecting . . . the secrecy of information important to our national security" (internal quotations omitted)).  Fourth, sealing certain portions of the Application is appropriate and indeed mandatory to protect against disclosure of grand jury information subject to Federal Rule of Criminal Procedure 6(e).  *See Leopold*, 964 F.3d at 1133 (Rule 6(e) "expressly makes secrecy the default and thus displaces the common-law right of access"); *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019) (courts lack inherent authority to permit disclosure of grand jury materials outside of the specific exemptions provided in Rule 6(e)(3)).

Lastly, in its motion before this Court, the *Times* argued that the First Amendment provides a right of access to the Application.  *See* Mot. at 17-21.  To the extent the *Times* maintains that position as to the Application in full, its arguments cannot prevail.  The First Amendment right of access to judicial materials applies where "(i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding."  *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980)).  The *Times* does not contend there is such a history of openness with regard to Section 2703(d) materials.  *See* Mot. at 18; *see also In re Leopold*, 300 F. Supp. 3d 61, 91 (D.D.C. 2018) (finding that "no historical tradition of openness exists as to . . . 2703(d) materials" and that such materials are not analogous to search warrants for purposes of this analysis), *vacated on other grounds*, *In re Leopold*, 964 F.3d 1121.  Nor would public access to Section 2703(d) applications "play[] a significant positive role in the functioning of the proceeding."  *Brice*, 649 F.3d at 795.  *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 291-92 (4th Cir. 2013) (finding no First Amendment right of access to Section 2703(d) orders or proceedings, including because those proceedings involve "[p]re-indictment investigative processes" that "are not amenable to the

practices and procedures employed in connection with other judicial proceedings" (internal quotations omitted)).

Even were this Court to recognize a First Amendment right of access to Section 2703(d) applications, for the reasons described above, the government, the subjects, and the witnesses in this case all have compelling interests in keeping the remaining portions of the Application under seal. These include protecting the privacy and reputational interests of uncharged subjects and other parties, as well as protecting law enforcement's compelling interests in maintaining the ability to obtain truthful information in future investigations.[4]

* * *

In an effort to be transparent, the government is filing this motion publicly and seeks to unseal appropriate portions of the Application promptly now that its investigation is closed. Of course, the *Times* has not yet had an opportunity to review the redacted Application that the government proposes to unseal. The government therefore requests that the Court review the government's proposed redactions to the Application and unseal the government's redacted version of the Application (as contained in Attachment B) if the Court agrees that this material can be disclosed. Should the Court wish, the government can also address in a sealed filing any questions the Court may have about the continued need for sealing specific portions of the Application. Lastly, should the Court wish to receive input from those third parties whose privacy interests are at issue, the government will facilitate that process.

---

[4] In the primary case relied on by the *Times*, *In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008), the court granted access to search warrant materials involving an exonerated suspect in the government's investigation of the mailing of anthrax to members of Congress and the media. Unlike here, the suspect's identity in that case was a matter of public record—including because the search of his property had been "covered as a live media event with helicopter footage" and because he had subsequently filed a lawsuit against the government. *Id.* at 86, 91.

## **REQUEST TO SEAL**

Because the Application is currently under seal, the government requests that Attachment A, which contains the Application with proposed redactions in a manner that renders the full Application visible, be filed under seal.  The government further requests that Attachment B, which applies the government's proposed redactions, be filed under seal until such time as the court grants the government's motion to partially unseal the Application.  The government does not believe there is a need to seal this motion or its proposed Orders, which are included as Attachments C and D.

## **CONCLUSION**

The government respectfully requests that the Court unseal the Application subject to the redactions identified in Attachments A and B, and that it deny the *Times*'s June 8 motion to the extent it seeks to unseal the remainder of the Application.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

_____/s/ *Gregg A. Maisel*_____
Gregg A. Maisel
Assistant United States Attorney
D.C. Bar No. 447902
National Security Section
555 Fourth St., N.W., Room 11-435
Washington, DC 20530
Phone: 202-252-7812
Gregg.Maisel@usdoj.gov

MARK J. LESKO
Acting Assistant Attorney General
New York Registration Number 5595335

10

_____/s/ *Jay I. Bratt*_
Jay I. Bratt
Section Chief
Illinois Bar No. 6187361
Counterintelligence and Export Control Section
National Security Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Phone: (202) 233-2113
Jay.Bratt2@usdoj.gov