IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Case No. 21-mc-91-JEB |

**THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION FOR ACCESS
TO CERTAIN SEALED COURT RECORDS**

Petitioner The New York Times Company ("The Times") respectfully submits this reply memorandum in further support of its motion for access to certain sealed court records (the "Access Motion") related to the Government's surveillance of Times journalists and its efforts to keep that surveillance secret through a series of highly unusual – and likely unconstitutional – gag orders. Since The Times filed its Access Motion, the Government has partially unsealed the requested records. But prosecutors continue to seek to withhold significant portions of those documents beyond what is permitted under the First Amendment and common law rights of access, information of significant public interest that may shed vital light on the Government's actions and motivations. It is possible that still-redacted sections of the court filings will show whether and how the Government was involved in surveilling reporters, the Government's proffered basis for the need for secrecy in these efforts, the Government's stated basis for pursuing journalists' records nearly four years after the suspected leaks occurred, and the Government personnel who were involved in this effort. Because the Government has not carried its burden to justify its withholdings, the Court should grant the Access Motion and order the Government to produce the records with only such narrowly targeted redactions that can satisfy the rigorous right of access standards.

**I.     THE PUBLIC HAS A RIGHT OF ACCESS TO THESE SEALED RECORDS**

In its Access Motion, The Times demonstrated that the public has two separate rights of access to judicial records arising from both the common law and the First Amendment. *See* Access Mot. at 11-20 (Dkt. 1). The Government now concedes that its December 2020 application under the Stored Communications Act for an order directing Google to turn over several months of email logs from four current or former Times journalists (the "Application") is subject to the common law right of access. *See* Gov't's Mot. and Resp. ("Resp.") at 5-8 (Dkt. 11). The Government objects, however, to the First Amendment right of access "as to the Application in full" on the grounds that there is no "history of openness with regard to Section 2703(d) materials" and that "public access to Section 2703(d) materials" would not "play[] a significant positive role in the functioning of the proceeding." *See id.* at 8-9 (internal marks and alteration omitted).

Though the Court can find that the common law right of access provides all the relief The Times seeks in this action, in the event the Court needs or chooses to reach the First Amendment right of access as well, the Government's objections are baseless.[1] On the "history of openness" point, courts have held that the "experience" prong of the "experience and logic" test is satisfied for pre-trial criminal proceedings based on a long history of public access. *See, e.g.*, *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 10-11 & n.3 (1986). Courts have also concluded that the First Amendment right of access applies to records and proceedings even if they have "no historical counterpart" so long as the "importance of the . . . proceeding" is clear. *Id.* at 10 n.3 (citing state supreme court decisions from Iowa, Minnesota, and Virginia);

---

[1] *See, e.g.*, *Washington Post v. Robinson*, 935 F.2d 282, 288 n.7 (D.C. Cir. 1991) ("[W]e reach the constitutional issues raised in the appeal because of the different and heightened protections of access that the first amendment dont provides over common law rights.").

2

*United States v. Simone*, 14 F.3d 833, 838 (3d Cir. 1994) (right of access applies to post-trial examinations of jury misconduct even though no history of the practice found before 1980); *United States v. Suarez*, 880 F.2d 626, 631 (2d Cir. 1989) (First Amendment access right applies to Criminal Justice Act records, even though "the CJA itself is . . . a fairly recent development, having been enacted in 1964").

For the logic prong, the Government ignores the arguments that The Times set out in its Access Motion, namely that (1) "openness of judicial processes and documents gives assurance that established procedures are being followed and that deviations will become known and corrected," *see In re New York Times Co.*, 585 F. Supp. 2d 83, 89-90 (D.D.C. 2008) (internal marks omitted); (2) "openness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage," because those materials "are often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures," *see id.*; and (3) "[p]ublic access to [these] materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police," *id.* Rather than address these arguments on their merits, the Government attempts to distinguish then-Chief Judge Lamberth's decision in *In re New York Times Co.* on the grounds that "the suspect's identity in that case was a matter of public record." *See* Resp. at 9 n.4. That distinction, however, makes no difference at all to the overall logic of access to these records.

The Government's objection to the First Amendment right of access is further weakened by the fact that, in asking the court for leave to file the Application under seal in the first place, the Government relied on *Washington Post v. Robinson* – a case involving the First Amendment right of access, not the common law right of access – for the proposition that it has a "compelling

3

governmental interest in confidentiality." *See* Application at 19.  Given this implied assurance that sealing satisfied the First Amendment access test, the Government should not now argue that the First Amendment access right does not even apply to this court record.

## II. THE GOVERNMENT HAS NOT CARRIED ITS BURDEN TO JUSTIFY ITS HEAVY REDACTIONS TO THESE PRESUMPTIVELY PUBLIC RECORDS

Because the public has a presumptive right of access to the records filed in this case, the Government has not adequately justified its extensive redactions.  The Court should now release the portions of these records that would answer the many questions that remain vitally important to The Times specifically and the public generally.  These questions include whether and how reporters were actually surveilled; what the Government's proffered basis was for the need for secrecy – especially relevant when similar source information had been requested from the phone companies *without* a gag order; what the Government's proffered basis was for pursuing these records nearly four years after the suspected leaks; which officials at the Department of Justice participated in approving such surveillance[2]; and what role – if any – political pressures

---

[2] Emails recently released by the Government pursuant to a FOIA request demonstrate that some of the Government attorneys involved in the National Security Section had a long – and critical – history with Adam Goldman, one of the reporters whose records were sought by the same division.  *See, e.g.*, June 22, 2014 email from Shawn Henry to Adam Goldman ("You are clearly one of those 'critics' who believe that was an 'extraordinary intrusion by prosecutors into journalist's communications.'  That fact, in and of itself, should have obviated any participation by you in this article."); June 21, 2014 email from Gregg Maisel to unknown recipients ("As predicted, Adam Goldman and the Washington Post have now written an article questioning our section's ability to handle the Benghazi case. . . . The article is full of cheap shots by anonymous sources, contrasted with strong statements in defense of us by named officials, including the Attorney General."); June 21, 2014 email from unknown sender to Gregg Maisel, with copies to various AUSAs ("[W]hen you read the article keep in the front of your mind that its author -- Adam Goldman -- has every reason to dislike us. We put his source for an egregious national security leak in jail.").  The released emails are attached in full as Exhibit A.  Release of the redacted information may shed light on whether there was any improper motive or animus underlying the targeting of Mr. Goldman.

4

from the White House may have played in launching this attack on a free and independent press.[3]

The Government concedes that a right of access applies, arguing only that "*portions* of the Application . . . must remain under seal." Resp. at 5 (emphasis added).[4] The Times agrees with the general proposition that portions of these records can and should remain under seal, including because this Application attempted to undermine First Amendment interests by sniffing out The Times's source(s). The Times is therefore *not* asking this Court to lift redactions that would reveal the source(s) of information obtained as part of The Times's newsgathering efforts, or the methods by which the Times may have communicated with its source(s), which would only exacerbate the attack on the reportorial process that the previous

---

[3] There is significant public interest in learning whether this extraordinary violation of press rights was motivated either by direct pressure from President Trump or by a desire to please the President. Several factors suggest there may have been a political motivation. For example, the *ex parte* Application was filed nearly four years after the underlying leak of information in The Times' story of April 22, 2017, and only weeks before President Trump was scheduled to leave office. The underlying leak investigation had already been public for a year at the time the Application was filed. The request for The Times' records was contemporaneous with similar surveillance on CNN and The Washington Post, two other news organizations that were the frequent subject of direct criticism by President Trump. Perhaps most importantly, though, the new Administration ultimately withdrew the Application and the non-disclosure orders, and closed the underlying investigation without indicting anyone.

[4] Any redactions should be subject to the six-factor test applicable to the common law right of access set out in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), or the four-factor test applicable to the First Amendment right of access set out in *Press-Enterprise II*, 478 U.S. 1. The *Hubbard* factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *See* Access Mot. at 12. The *Press-Enterprise II* factors are (1) whether there is a substantial probability of prejudice to a compelling interest if the right is not limited; (2) whether there is an alternative to a limitation of the access right that will adequately protect against the threatened harm; (3) whether restricting access will effectively protect against the threatened harm; and (4) whether the restriction on access is narrowly tailored. Access Mot. at 20.

Administration made with this Application.[5] *See, e.g.*, 28 C.F.R. § 50.10(a)(1)-(2) (Department of Justice regulations recognizing that "[b]ecause freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news," it is necessary to balance law enforcement interests with the public interest in "safeguarding the essential role of the free press in fostering government accountability and an open society"); *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981) (noting that "[u]nless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters").

For its part, the Government asserts four bases for keeping portions of these court records under seal: (1) the "privacy, reputational, and due process interests" of "witnesses and uncharged subjects of the investigation," *see* Resp. at 5; (2) its own "law enforcement interests," *see id.* at 7; (3) "protect[ing] against disclosure of the precise nature of the classified information" at issue in the underlying investigation, *see id.* at 7-8; and (4) "protect[ing] against disclosure of grand jury information subject to Federal Rule of Criminal Procedure 6(e)," *see id.* at 8. The Times agrees that these interests are compelling generally, but the question in this right of access analysis is whether the Government has shown that *these* redactions actually protect those interests and that they are the least restrictive means of doing so. *See Press-Enterprise II*, 478 U.S. at 9.[6] The Government has not carried this heavy burden, and it cannot do so. Moreover, the public has a

---

[5] In seeking to shed light on the Government's brazen attempt to secretly uncover The Times' confidential source(s), The Times had no choice but to bring this Motion. It would therefore chill future efforts to advance the public's right of access to judicial records and proceedings if this very information – The Times' sources and methods – were released as a result of The Times' attempt to investigate the Government's improper actions.

[6] Any limits on the disclosure of information imposed by statute or the Federal Rules are necessarily superseded by the *constitutional* right of access. *See In re New York Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987) ("Obviously, a statute cannot override a constitutional right.").

significant interest in learning what information the Government put before the Court in the Application, and whether it misrepresented the need for the non-disclosure order,[7] given that, *inter alia*: (1) the underlying leak investigation was already a matter of public record at the time the Government filed its Application, *see* Access Motion at 4-5[8]; (2) Times employees could not possibly have destroyed or tampered with years-old information that was in the possession of Google, not The Times, *see id.* at 6-7; and (3) the Government had sought call records from The Times's telephone provider just months earlier *without* imposing a gag order, *see id.* at 8 & n.13.

But even a cursory review of the Government's redactions demonstrates that they are wildly overbroad and cannot be justified under the proper standard. For example, in the Application and each of the Government's subsequent motions, the Government has redacted the name(s) of the Assistant United States Attorney(s) who were on the papers. *See, e.g.*, Application at 20. The Government has made *no* effort to justify redacting these names, nor could it possibly do so. These attorneys – each of whom swore an oath to support and defend the Constitution of the United States – participated in prosecutorial intrusions into newsgathering processes protected by the First Amendment during the tumultuous final days of the Trump Administration. In doing so, they appeared to make misrepresentations to this court about the

---

[7] The non-disclosure order significantly impinged the ability of The Times and its reporters to fully challenge the Government's actions. As noted in the Times' original objection letter, "the nondisclosure order abridges The New York Times and its reporters' legitimate First and Fourth Amendment interests, as it prevents the attorneys covered under the order from conferring with the Reporters whose records are being sought about, *inter alia*, the relevance of the requested records, any confidential sources that may be disclosed by the records, and privacy interests implicated by disclosure." Letter from T. Boutrous & A. Southwell to T. Chawla & A. Small (Mar. 16, 2021) at 4 n.4, available at https://int.nyt.com/data/documenttools/gag-order-nyt-emails-fight/34c4f238d4010147/full.pdf.

[8] Director of National Intelligence John Ratcliffe declassified information about the same investigation in October 2020, so the Government's broad arguments about the need to maintain its secrecy in December 2020 ring hollow. *See, e.g.*, DOJ_REQ_0000135-37, attached as Exhibit B.

need for a series of unnecessary (and therefore unconstitutional) gag orders,[9] first to Google, and then severely limiting who at The Times could be told about the Government's attempt to discover the reporters' sources. These attorneys have no right to or expectation of privacy in these circumstances, and though they may be embarrassed by their participation in this affair, "[m]ere embarrassment is insufficient to overcome the strong presumption of public access inherent in the common law right." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 679 (3d Cir. 2019). The Times, however, does have the right to know the names of the attorneys who participated in these efforts, and the public has the right to know who these attorneys are because they engaged in these efforts targeting news reporting in the ***public's*** name.[10]

---

[9] *See, e.g.*, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ("[P]rior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights"); *New York Times Co. v. United States*, 403 U.S. 713 (1971) ("These disclosures may have a serious impact. But that is no basis for sanctioning a previous restraint on the press.").

[10] Other overbroad redactions include the section of the U.S. Code at issue in the underlying matter, even though it is now a matter of public record that the now-closed investigation concerned an alleged violation of 18 U.S.C. §§ 641 and 736. The sections remain redacted in all of the Sealed Records except for the Application. *See* Application at 1, 3-4. And in the various filings docketed at ECF Nos. 2, 3, 3-1, 4, 5, 5-1, 6, 7, 7-1, 9, 11, 13, and 16, the Government has redacted the names of many individuals and organizations that are now a matter of public record, including (1) the current or former Times reporters who were targeted by this improper surveillance effort; (2) The Times's Deputy General Counsel; (3) its General Counsel; (4) its publisher; (5) its President and CEO; and (6) its outside counsel. In addition, although the Government has repeatedly suggested that much of the material requested by The Times has been unsealed, *see* Resp. at 3 & n.1, the docket for the underlying matter, Case No. 20-sc-3361, remains hidden from public view. A search for that case number on PACER returns only the result: "SEALED v. SEALED; Case is not available to the public." Though the Court has made at least some of the filings from the underlying case available for download on the Court's website, *see* https://www.dcd.uscourts.gov/file/redacted-2-17-proposedpdf, without the docket it is impossible to verify whether any records remain sealed, and the public at large remains in the dark. *See, e.g.*, *In re Leopold*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) ("It would make little sense to provide public access to court documents but not to the indices that record them and thus make them accessible.").

Such overbroad assertions of secrecy provide The Times little confidence that the remaining redactions are proper. To the extent the material the Justice Department seeks to maintain under seal includes details about the surveillance of reporters, the proffered basis for doing so or for a need for secrecy, or the personnel involved or possible political motivations, such information is of significant public concern and should be disclosed because the Government has not justified its overbroad redactions to the Application and the other records. Narrowly targeted redactions alone can satisfy the public's right of access to this material.

## **CONCLUSION**

For all of the foregoing reasons, The Times respectfully requests that this Court grant its motion and enter an order releasing versions of the Sealed Records with substantially fewer redactions.

Dated: October 11, 2021

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Matthew E. Kelley (#1018126)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com
mishkinm@ballardspahr.com

Lynn Oberlander (*pro hac vice*)
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (212) 223-0200 | Fax: (212) 223-1942
oberlanderl@ballardspahr.com

*Counsel for The New York Times Company*