# Exhibit A



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff      *Suite 5.400, 3CON Building*     *(202) 252-6020*
*175 N Street, NE*     *FAX (202) 252-6048*
*Washington, DC  20530*

August 23, 2021

*Sent via email:* alexandra.settelmayer@nytimes.com

Adam Goldman
New York Times
c/o Alexandra Settelmayer

Request Number:    EOUSA-2021-002362
Subject of Request:    Self

Dear Adam Goldman:

    This letter is the third interim response to your Freedom of Information Act/Privacy Act request dated June 25, 2014 to the Department of Justice, Office of Information Policy (DOJ/OIP).  OIP re-routed your request to the Executive Office for United States Attorneys (EOUSA) for processing.  The EOUSA initially assigned your request file numbers 2015-00342 and 2016-01466.  We reassigned your request file number EOUSA-2021-002362.  Please use this file number when referencing this request.  The EOUSA is the official record-keeper for all records located within EOUSA and the various United States Attorneys' Offices, to include the District of Columbia.

    To provide you with the greatest degree of access authorized by the FOIA and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act.  28 CFR § 16.81.  We have also processed your request under the Freedom of Information Act and are making all records required to be released or considered appropriate for release as a matter of discretion, available to you.

    Enclosed please find eight (8) pages released to you in full and/or in part.  **We reviewed all the information that was redacted to determine if any information could be segregated for release.**  The exemptions cited for withholding portions of records are listed below.

    5 U.S.C. § 552(b)(5), which protects from release information that is protected by the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

    5 U.S.C. § 552(b)(6), which protects from release personal privacy information that if released would constitute a clearly unwarranted invasion of personal privacy.

      This partial release of information is the third interim response to this above-numbered request.  If you are not satisfied with the EOUSA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

      You may contact our FOIA Public Liaison at the Executive Office for United States Attorneys (EOUSA) for any further assistance and to discuss any aspect of your request.  The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020; or facsimile 202-252-6048.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

      Sincerely,

Kevin Krebs
Assistant Director

Enclosure(s)

NOT REVIEWED

**From:** (b)(6)
**Sent:** Sunday, June 22, 2014 4:01 PM
**To:** Machen Jr., Ronald C. (USADC)
**Subject:** Fw: wow....really?

Please do NOT forward this to anyone else; I just wanted you to read it. He called me 10 minutes after I sent it, and we had a long conversation. You and I can chat about it. Thx (b)(6)

On Sunday, June 22, 2014 3:25 PM, (b)(6) wrote:

Adam,

I read your article in today's WP entitled "Benghazi case is key test for DC attorneys." I am very annoyed at the way you characterized (or rather, FAILED to characterize) my comments regarding Ron Machen. While technically your quote is accurate ("Ron knows the issues. I have no criticism of him",) it's interesting that is all you say about him attributed to me. I spent 45 minutes total over two separate conversations with you making comprehensive and laudatory remarks about his efforts as US Attorney, specifically in national security cases. I described his expertise, his character, his ability to collaborate, his aggressive prosecutorial nature, and direct actions he took during my time as (b)(6) while working with him almost daily. Anybody who reads that "all" I said is "I have no criticism of him," will read that as "he's not that good, but I really don't want to go on record saying anything negative." I know that fact is not lost on you; your careful selection of statements to include in your article, and positive comments to omit, demonstrates your predisposition and bias against the DC USAO.

I also find it interesting that, while you technically provide a "disclosure" that the USAO subpoenaed documents from AP reporters, "...including Adam Goldman, who had co-written the AP article and now works for The Post," it's written in third person and doesn't point out specifically to the readers that "...Adam Goldman, who....now works for The Post AND CO-WROTE THIS ARTICLE." You are clearly one of those "critics" who believe that was an "extraordinary intrusion by prosecutors into journalist's communications." That fact, in and of itself, should have obviated any participation by you in this article. It's a clear conflict of interest, demonstrated by your inability to disclose ANYTHING positive I said about Ron Machen. As a long-time Washington Post reader, I'm offended at that omission, which I deem unprofessional.

I've worked successfully with dozens of reporters in this city across all media for more than a decade, including several at the Washington Post. Fortunately, I've never seen anyone "shape" a story due to personal feelings before quite the way you've done. I hope I never see it again, as it can cause people to lose confidence in the press, which is a necessary forum in our democratic society. (b)(6)

**From:** (b)(6) USADC)
**Sent:** Saturday, June 21, 2014 11:43 PM
**To:** Machen Jr., Ronald C. (USADC)
**Subject:** Fwd: Critical Article on (b)(6) WP

(b)(5); (b)(6)

Begin forwarded message:

**From:** (b)(6) (USADC)' (b)(6)
**Date:** June 21, 2014 at 11:17:44 PM EDT
**To:** "Maisel, Gregg (USADC)" (b)(6)
**Cc:** '(b)(6) (USADC) "(b)(6) (USADC)"
(b)(6) (USADC)" <EBarns@usa.doj.gov>, (b)(6)
(b)(6) (USADC)" (b)(6) (USADC)" (b)(6)
(b)(6) (USADC)" (b)(6)
(USADC)" (b)(6) (USADC)"
(b)(6) (USADC)"(b)(6)
(b)(6) USADC)"(b)(6) (USADC)"
(b)(6) (USADC)" (b)(6)
(b)(6) (USADC)(b)(6) USADC)"
(b)(6) (USADC)" (b)(6)
(USADC)'(b)(6) (USADC)" (b)(6)
(b)(6) (USADC)" (b)(6) (USADC)"
(b)(6)
(b)(6) USADC)(b)(6) (USADC)"
(b)(6) (USADC)" (b)(6)
(b)(6) USADC)(b)(6) USADC)"
(b)(6) (USADC)(b)(6)
"Yette, Frederick (USADC)" <FYette@usa.doj.gov>, "Zuhoski, Selena (USADC)"
(b)(6) (USADC)" (b)(6)
**Subject: Re: Critical Article on** (b)(6) **in WP**

Let me echo Gregg's comments. I have great respect for all of you and enormous confidence in your work. While many of you already know this, when you read the article keep in the front of your mind that its author -- Adam Goldman -- has every reason to dislike us. We put his source for an egregious national security leak in jail.

(b)(6)

On Jun 21, 2014, at 11:08 PM, "Maisel, Gregg (USADC)" (b)(6) wrote:

(b)(6)

1

As predicted, Adam Goldman and the Washington Post have now written an article questioning our section's ability to handle the Benghazi case. I have attached a link below. I expect it will be in tomorrow's (Sunday's) paper. The article is full of cheap shots by anonymous sources, contrasted with strong statements in defense of us by named officials, including the Attorney General. Obviously, we should not be distracted by anonymous detractors. As I said in my email earlier this week, I could not be any more proud of the work all of you are doing. The Attorney General and the U.S. Attorney have repeatedly placed their confidence in us and you have consistently performed at the highest levels on some of the nation's most important cases. I know we will continue to accomplish great things in the weeks and months ahead.

- Gregg


- http://wapo.st/1pWfN1A

**From:** Machen Jr., Ronald C. (USADC)
**Sent:** Monday, June 23, 2014 10:35 AM
**To:** (b)(6)
**Subject:** RE: wow....really?

Let me know when you free up today so I can hear about your conversation.

Ron

**From:** (b)(6) [mailto:(b)(6)]
**Sent:** Sunday, June 22, 2014 4:01 PM
**To:** Machen Jr., Ronald C. (USADC)
**Subject:** Fw: wow....really?

Please do NOT forward this to anyone else; I just wanted you to read it. He called me 10 minutes after I sent it, and we had a long conversation. You and I can chat about it. Thx (b)(6)

On Sunday, June 22, 2014 3:25 PM, Shawn Henry (b)(6) wrote:

Adam,

I read your article in today's WP entitled "Benghazi case is key test for DC attorneys." I am very annoyed at the way you characterized (or rather, FAILED to characterize) my comments regarding Ron Machen. While technically your quote is accurate ("Ron knows the issues. I have no criticism of him",) it's interesting that is all you say about him attributed to me. I spent 45 minutes total over two separate conversations with you making comprehensive and laudatory remarks about his efforts as US Attorney, specifically in national security cases. I described his expertise, his character, his ability to collaborate, his aggressive prosecutorial nature, and direct actions he took during my time as (b)(6) while working with him almost daily. Anybody who reads that "all" I said is "I have no criticism of him," will read that as "he's not that good, but I really don't want to go on record saying anything negative." I know that fact is not lost on you; your careful selection of statements to include in your article, and positive comments to omit, demonstrates your predisposition and bias against the DC USAO.

I also find it interesting that, while you technically provide a "disclosure" that the USAO subpoenaed documents from AP reporters, ". including Adam Goldman, who had co-written the AP article and now works for The Post," it's written in third person and doesn't point out specifically to the readers that "...Adam Goldman, who....now works for The Post AND CO-WROTE THIS ARTICLE." You are clearly one of those "critics" who believe that was an "extraordinary intrusion by prosecutors into journalist's communications." That fact, in and of itself, should have obviated any participation by you in this article. It's a clear conflict of interest, demonstrated by your inability to disclose ANYTHING positive I said about Ron Machen. As a long-time Washington Post reader, I'm offended at that omission, which I deem unprofessional.

I've worked successfully with dozens of reporters in this city across all media for more than a decade, including several at the Washington Post. Fortunately, I've never seen anyone "shape" a story due to personal feelings before quite the way you've done. I hope I never see it again, as it can cause people to lose confidence in the press, which is a necessary forum in our democratic society. (b)(6)

1

**From:** Machen Jr., Ronald C. (USADC)
**Sent:** Sunday, June 22, 2014 7:27 PM
**To:** (b)(6)
**Subject:** Re: wow....really?

I will not forward it.

Thanks for the support my friend. Your friendship is one of the true benefits that I have experienced from this job. Appreciate you.

Ron

**From:** (b)(6) [mailto:(b)(6)]
**Sent:** Sunday, June 22, 2014 04:00 PM
**To:** Machen Jr., Ronald C. (USADC)
**Subject:** Fw: wow....really?

Please do NOT forward this to anyone else; I just wanted you to read it. He called me 10 minutes after I sent it, and we had a long conversation. You and I can chat about it. Thx (b)(6)

On Sunday, June 22, 2014 3:25 PM (b)(6) wrote:

Adam,

I read your article in today's WP entitled "Benghazi case is key test for DC attorneys." I am very annoyed at the way you characterized (or rather, FAILED to characterize) my comments regarding Ron Machen. While technically your quote is accurate ("Ron knows the issues. I have no criticism of him",) it's interesting that is all you say about him attributed to me  I spent 45 minutes total over two separate conversations with you making comprehensive and laudatory remarks about his efforts as US Attorney, specifically in national security cases. I described his expertise, his character, his ability to collaborate, his aggressive prosecutorial nature, and direct actions he took during my time as (b)(6) while working with him almost daily. Anybody who reads that "all" I said is "I have no criticism of him," will read that as "he's not that good, but I really don't want to go on record saying anything negative." I know that fact is not lost on you; your careful selection of statements to include in your article, and positive comments to omit, demonstrates your predisposition and bias against the DC USAO.

I also find it interesting that, while you technically provide a "disclosure" that the USAO subpoenaed documents from AP reporters, ".. including Adam Goldman, who had co-written the AP article and now works for The Post," it's written in third person and doesn't point out specifically to the readers that ".. Adam Goldman, who....now works for The Post AND CO-WROTE THIS ARTICLE."  You are clearly one of those "critics" who believe that was an "extraordinary intrusion by prosecutors into journalist's communications." That fact, in and of itself, should have obviated any participation by you in this article. It's a clear conflict of interest, demonstrated by your inability to disclose ANYTHING positive I said about Ron Machen. As a long-time Washington Post reader, I'm offended at that omission, which I deem unprofessional.

I've worked successfully with dozens of reporters in this city across all media for more than a decade, including several at the Washington Post. Fortunately, I've never seen anyone "shape" a story due to personal feelings before quite the way you've done. I hope I never see it again, as it can cause people to lose confidence in the press, which is a necessary forum in our democratic society. (b)(6)

1

**From:** Machen Jr., Ronald C. (USADC)
**Sent:** Tuesday, June 17, 2014 7:51 PM
**To:** (b)(6)
**Subject:** Fw: Fwd: Request

---

**From:** Miller, William (USADC)
**Sent:** Tuesday, June 17, 2014 07:46 PM
**To:** Machen Jr., Ronald C. (USADC) (b)(6) ; Jones, Matthew (USADC)
**Subject:** Fwd: Request

FYI - I will contact his editors first thing in the morning

Sent from my iPhone

Begin forwarded message:

> **From:** "Goldman, Adam M" <Adam.Goldman@washpost.com>
> **Date:** June 17, 2014 at 6:31:01 PM EDT
> **To:** William Miller (b)(6)
> **Subject:** Request
>
> Bill,
>
> I'd like the names of the Benghazi prosecutors and a rundown of their experience involving terrorism cases. I can also check PACER with their names.
>
> Why did it take almost a year to file charges against Khattalah and dozen or so others. We had talked about this in the meeting. I don't think I ever got an answer.
>
> I am aiming to write for this weekend.
>
> What is the biggest terrorism case your office has handled. Is there one that stands out among those you provided in the packet?
>
> I am happy to engage the prosecutors before Friday.
>
> FYI, Carol is on vacation.
>
> Adam

1

**From:** Machen Jr., Ronald C. (USADC)
**Sent:** Friday, May 16, 2014 12:48 PM
**To:** Miller, William (USADC)
**Subject:** Re: Update on call to Post editor

Ok, as always, I defer to you. Good work. Let's just raise it sooner rather than later.

**From:** Miller, William (USADC)
**Sent:** Friday, May 16, 2014 12:13 PM
**To:** Machen Jr., Ronald C. (USADC)
**Subject:** RE: Update on call to Post editor

I tried to turn it around to that subject, but never got a good opening. Because the editor was saying that everything is still in the reporting stages, and there is no story at this point and no target date for publication, I think it would have backfired and led to an argument if I worked that into the conversation. I thought we did OK making sure he knew that we were planning a major response. I agree, though, we definitely need to raise the issue and ask the Post to disclose it well before the story is edited.

**From:** Machen Jr., Ronald C. (USADC)
**Sent:** Friday, May 16, 2014 12:05 PM
**To:** Miller, William (USADC)
**Subject:** Re: Update on call to Post editor

Hey Bill,
I thought whole purpose of call was to alert him that we had concerns about the motivation for this story given the conflict? I am hoping editor would say the story is a bad idea to Goldman (let someone else look at it) before it is written.

In any event, we can wait now but I think the sooner we raise the conflict issue the better.
What is your idea of when you will likely raise the issue?

**From:** Miller, William (USADC)
**Sent:** Friday, May 16, 2014 11:38 AM
**To:** Machen Jr., Ronald C. (USADC); Jones, Matthew (USADC)
**Subject:** Update on call to Post editor

I spoke with Peter Finn, the editor in charge of Adam Goldman and Carol Leonnig's work. He tells me that there is no story at this point, and that he has not been given a draft by the reporters. He also says that there is no target date and that we should have no concerns about the timing of the Friday meeting. I told him that we plan to provide a detailed overview of the National Security Section's work and address the questions the Post is raising. I invited him to the meeting but he declined

I didn't see an opening to raise the conflicts issue, but did tell him that we hope and plan to turn the story's focus completely around - that we believe the section is a national leader with a history of accomplishment. Finally, I told him that we've provided the names of people for Adam and Carol to contact, including the AG.

1

Finn wasn't particularly open or helpful, but he was reassuring about the timing and the state of their reporting.