UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY FOR ACCESS TO CERTAIN SEALED COURT RECORDS. | Miscellaneous Action No. 21-91 (JEB) |

**MEMORANDUM OPINION**

In 2017, The New York Times published an article that described in depth how then-FBI Director James Comey had handled the investigation into former Secretary of State Hillary Clinton's private email servers. The article contained classified information. Nearly three years later, in December 2020, the Government sought to learn more about communications between the potential leaker(s) of that information and the four Times reporters who had worked on that story. It thus applied to a magistrate judge for an order requiring Google, which administered the Times's email system, to confidentially provide certain non-content information about emails sent by and to those reporters during the relevant period. After news of these and subsequent court filings became public, the Times — understandably concerned by these developments — sought access from this Court to the Application, a subsequent Motion by the Government, and associated materials on the case's docket. As the Government has now agreed to release parts of the Application, the entirety of the relevant Motion, and the other docket entries in the case with only a few minor redactions, this dispute has been narrowed considerably.

The Court now concludes that nearly all of the remaining redacted information in the Application should stay under seal and will thus deny the Times's Motion for Access to the Application except as to one specific piece of information: the name of the Assistant U.S. Attorney who filed the Application. It will also order that the docket itself and the remaining

1

docket entries in the underlying case, In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for Investigation of Violation of 18 U.S.C. §§ 641 and 793, No. 20-sc-3361, be unsealed consistent with the limited redactions proposed by the Government.

I.     **Background**

The 2017 New York Times article that ignited this case described then-Director Comey's handling of the investigation into Hillary Clinton's private email servers during the 2016 Presidential campaign. It focused in particular on decisions by the FBI about when to make various announcements discussing the progress of the investigation, given the sensitive timing of the upcoming election. See ECF No. 1 (Times Motion to Unseal) at 3; Matt Apuzzo, Michael S. Schmidt, Adam Goldman, & Eric Lichtblau, Comey Tried to Shield the F.B.I. from Politics. Then He Shaped an Election, The New York Times (Apr. 22, 2017), https://nyti.ms/3CdK8Rt. The article was based on interviews with current and former law-enforcement and other Government officials. See Times Mot. at 3. It also included classified information, which was not specifically identified as such and which was not "authorized for disclosure and remains classified to this day." ECF No. 14 (Redacted App.) at 5. As a result, following the article's publication, an agency in the intelligence community "made a criminal referral" in the summer of 2017, which led to an investigation by the FBI and prosecutors at the Justice Department. Id.

In December 2020, three years down the road, the Government filed an Application under seal for an order pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d), to collect information from Google about the emails of four current or former Times journalists. See Times Mot. at 2; see also Redacted App. The Application covered only non-content information such as to whom the emails were sent and when they were sent and received. See Case No. 20-

sc-3361, ECF No. 1 (Jan. 5 Order) at 4–5 (available at https://bit.ly/3C6q4k0); see also Times Mot. at 5.

Magistrate Judge Zia Faruqui granted the Application on January 5, 2021.  See Jan. 5 Order at 1–2.  His Order prevented Google from disclosing the existence of the Order for one year, a restriction that was included because "there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence."  Id. at 1–2.  Several months later, Magistrate Judge Faruqui granted the Government's *ex parte* motion of February 25, 2021.  This modified the January 5 Order by permitting Google to tell the Times's Deputy General Counsel David McCraw about the prior order, but prohibited McCraw from sharing news of the Order with other Times leadership or the reporters themselves.  See Case No. 20-sc-3361, ECF No. 4 (March 3 Order); see also Times Mot. at 2.  Other materials on the docket before Magistrate Judge Faruqui were also kept under seal as the case proceeded.

In spring 2021, the Times's outside counsel contacted the Justice Department and the Assistant U.S. Attorney involved in the case before Magistrate Judge Faruqui to request that they withdraw the Application and permit greater disclosure of the court's orders.  See Times Mot. at 7.  In early June, Magistrate Judge Faruqui approved requests from the Government "to quash the January 5 Order and the March 3 Order, thus freeing Mr. McCraw to tell the four reporters," as well as Times leadership and members of the public about the Order.  Id.  Magistrate Judge Faruqui also partially unsealed other docket entries in the case at the Government's request.  See ECF No. 11 (Government Motion to Partially Unseal) at 3 n.1.  Additionally, Justice informed the reporters that it had obtained several months of their 2017 phone records and had unsuccessfully sought non-content information about their emails.  See Times Mot. at 7.

3

On June 8, 2021, shortly after these disclosures were made, the Times filed the Motion for Access to Certain Sealed Court Records now before this Court seeking to unseal the Application, the Government's *ex parte* motion from February 25, 2021, the docket itself in the underlying case, and the redactions that remained on docket entries in that case. The Government responded by moving to partially unseal the Application. See Gov. Mot. at 1. This Court granted that motion, but as the Times pointed out in its reply, this still left redacted significant portions of the Application related to the investigation. See Minute Order of September 20, 2021; ECF No. 16 (Times Reply). The Government also noted that its *ex parte* motion seeking to limit disclosure to only one lawyer at the Times had already been unsealed at the Government's request and thus need not be addressed. See Gov. Mot. at 3 n.1.

As the Government had not fully responded to the Times's motion in regard to the entries numbered ECF Nos. 2–17 on the docket in In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for Investigation of Violation of 18 U.S.C. §§ 641 and 793, Case No. 20-sc-3361, in October 2021, this Court ordered the Government to file a pleading addressing which redactions it wished to maintain on those entries. See Minute Order of October 28, 2021. In that pleading, the Government agreed to lift many of the redactions it had originally proposed on the docket entries, including those covering the following areas: the specific criminal statutes in the underlying investigation; material identifying executives, reporters, and counsel for the Times; and the names of Google's counsel and the Government's attorneys. See ECF No. 18 (Government Resp. to Order of the Court) at 1. It also shared a PDF of the case docket that contained no redactions other than one obscuring a lawyer's PACER username. This leaves only two minor redactions for the Court to consider on the docket entries: 1) one set containing the four reporters' full email addresses in Attachment A to the January 5, 2021, Order;

4

and 2) one phrase-long redaction on the Motion to Withdraw the Application filed in June 2021. See Gov. Resp. at 2. The Court need not address the redaction of the PACER username because it orders that the docket itself be unsealed consistent with the Government's motion and Magistrate Judge Faruqui's order of June 30, 2021. See Gov. Mot. at 3.

So where does that leave us? The Times still seeks the unsealing of two categories of material: 1) many of the remaining redactions in the Government's § 2703(d) Application; and 2) the two related docket entries in case 20-sc-3361. See Times Mot. at 2. As the former category is considerably larger, the Court spends most of its discussion there. It also notes that it is has reviewed *in camera* all outstanding redactions.

**II.     Analysis**

The Times requests access to judicial records under both the common law and the First Amendment, which entail separate but similar inquiries. The Court looks at them in turn.

   A.   Common-Law Right of Access

"In the courts of this country — including the federal courts — the common law bestows upon the public a right of access to public records and documents." Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 902 (D.C. Cir. 1996) (internal quotation marks omitted). This doctrine of transparency, which includes the right to access "judicial records," Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978), is grounded in the public's "interest in keeping a watchful eye on the workings of public agencies." SEC v. Am. Int'l Grp., 712 F.3d 1, 3 (D.C. Cir. 2013) (internal quotation marks and citation omitted). "[E]nsuring the integrity of judicial proceedings" serves as another pillar of this mission. See Metlife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 665 (D.C. Cir. 2017) (citation omitted). Given these underpinnings, the

public's entitlement to judicial records "is fundamental to a democratic state." Id. (citation omitted).

The Times believes that under this common-law right of access, some of the remaining redactions in the Government's Application and in other docket entries should be lifted. To succeed on this claim, the Times must clear two hurdles. First, it must demonstrate that the information it seeks access to in fact qualifies as a "judicial record." In re Fort Totten Metrorail Cases, 960 F. Supp. 2d 2, 6 (D.D.C. 2013) (citing Wash. Legal Found., 89 F.3d at 902). Whether this requirement is satisfied depends on "the role [the document] plays in the adjudicatory process." United States v. El-Sayegh, 131 F.3d 158, 163 (D.C. Cir. 1997). Something "intended to influence" a court's pending decision — such as a party's brief — is most likely a judicial record, see Metlife, 865 F.3d at 668, while a document would not qualify if it is one that the court "made no decisions" about and did not "otherwise rel[y]" on. See Am. Int'l Grp., 712 F.3d at 3–4.

A court's conclusion that a document constitutes a judicial record triggers a "strong presumption in favor of public access." EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citation omitted). But making it over this first bar is not enough to entitle the moving party to view the records it seeks, as the common-law "right is not absolute." Am. Int'l Grp., 712 F.3d at 3. Rather, at the second stage of the Court's inquiry, it must determine whether "the government's interest in secrecy outweighs the public's interest in disclosure." Id. To map this broad inquiry on to a particular factual circumstance, the D.C. Circuit has developed a six-pronged test, known as the Hubbard factors, which "fully account[s] for the various public and private interests at stake." Metlife, 865 F.3d at 665–66 (citing United States v. Hubbard, 650 F.2d 293, 317–22 (D.C. Cir. 1980)). These factors are:

>     (1) the need for public access to the documents at issue;
>
>     (2) the extent of previous public access to the documents;
>
>     (3) the fact that someone has objected to disclosure, and the identity of that person;
>
>     (4) the strength of any property and privacy interests asserted;
>
>     (5) the possibility of prejudice to those opposing disclosure; and
>
>     (6) the purposes for which the documents were introduced during the judicial proceedings.

Nat'l Children's Ctr., 98 F.3d at 1409 (citing Hubbard, 650 F.2d at 317–22). A finding in favor of the Government "might act to overcome th[e] presumption" in favor of access. Id.

### 1. *Judicial Records*

There is no question that the Application is a judicial record. The D.C. Circuit has explained that "applications for [18 U.S.C. § 2703(d)] orders and their supporting documents (e.g., accompanying affidavits)" are judicial records. In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords., 964 F.3d 1121, 1128 (D.C. Cir. 2020). The other documents with redactions are Attachment A to the January 5 Order, the Motion to Withdraw the Application, and the docket itself. Although neither party addresses the status of these documents, there is no reason to believe that they are not judicial records as well. Id. at 1128–29 (court orders and dockets are judicial records); see also Metlife, 865 F.3d at 667 (brief is judicial record). The Court is thus free to turn to the Hubbard factors.

### 2. Hubbard *Factors: Section 2703(d) Application*

The conclusion that the Application is a judicial record creates a presumption in favor of its disclosure. See Wash. Legal Found., 89 F.3d at 902. The question of whether the redactions

7

should remain in place then turns on whether the six Hubbard factors sufficiently tip the scales back in the Government's favor. See Nat'l Children's Ctr., 98 F.3d at 1409.

At the outset, the Times acknowledges that portions of the Application "can and should remain under seal," and it is "not asking this Court to lift redactions that would reveal the source(s) of information obtained as part of The Times's newsgathering efforts, or the methods by which the Times may have communicated with its source(s)." Times Reply at 5. Many of the redactions in fact fall into this category, which both parties agree should remain sealed. The Court also recognizes that the Times is in the unenviable position of having to argue for access to information that it cannot be sure is contained in the record. In fact, much of the information that the Times hopes to acquire — such as details on the officials involved in authorizing the surveillance, the basis for secrecy, and the role of any political pressures — does not appear in the Application. Cf. Times Reply at 1. With those caveats, the Court will now consider how each Hubbard prong applies to the information redacted.

The first prong is "the need for public access to the documents at issue." Nat'l Children's Ctr., 98 F.3d at 1409. The D.C. Circuit recently admonished that in assessing the need for public access, a district court "should consider the public's need to access the information that remains sealed, not the public's need for other information sought in the overall lawsuit." CNN v. FBI, 984 F.3d 114, 119 (D.C. Cir. 2021). The Government asserts that "any need for public access here is satisfied by release of the portions of the Application which the government seeks to unseal." Gov. Mot. at 5 n.3. The Times rejoins that "the public . . . has a powerful interest in learning what the Government included (or chose not to include) in its Application that would lead the Court to" determine that notifying the Times when the Application was granted could have disrupted the investigation. See Times Mot. at 13. The Court concurs generally with the

Times that there is a strong public interest in understanding on what basis the Government sought to surveil members of the media.

The Court next considers "the extent of previous public access to the documents." Nat'l Children's Ctr., 98 F.3d at 1409.  In assessing this factor, it must look to the "the public's previous access to the sealed information, not its previous access to the information available in the overall lawsuit." CNN, 984 F.3d at 119.  When the Times filed its initial motion to unseal, no records had yet been produced, leaving this factor neutral.  See Times Mot. at 14.  Now, however, the Government has unsealed a significant portion of the Application but left some information redacted and inaccessible to the public.  Because there is no indication that this specific sealed material has ever been released, despite publicity around the general contours of the investigation, this factor continues to be neutral.  Vanda Pharms., Inc. v. FDA, No. 19-301, 2021 WL 1820264, at *7 (D.D.C. May 6, 2021) (second *Hubbard* factor neutral when no previous access to sealed portions of documents).

Third, the Court addresses "the fact that someone has objected to disclosure, and the identity of that person." Nat'l Children's Ctr., 98 F.3d at 1409.  Here, the Justice Department has objected to disclosure of the sealed material.  See Gov. Mot. at 5–9.  Although "litigants to [a] proceeding have a lesser claim to privacy than third parties" when they object in that proceeding, see Hyatt v. Lee, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (citation omitted), the Department has a unique interest in protecting the integrity of its investigations, and it would be difficult for another third party — such as the source, a witness, or a specific law-enforcement officer — to object without revealing precisely the information the Government seeks to protect. See CNN, 984 F.3d at 120 (noting that litigant FBI was natural objector to unsealing intelligence

sources because sources themselves could not complain).  The nature of the objection thus supports the Government.

The fourth and fifth prongs of the Hubbard test can be considered together and bear heavily on this case. These two are "the strength of any property and privacy interests asserted" and "the possibility of prejudice to those opposing disclosure."  Nat'l Children's Ctr., 98 F.3d at 1409.  The crux of the Government's argument rests on these two factors, as it maintains that individual privacy interests, law-enforcement interests, and the protection of classified and grand-jury information are all at stake.

The Government initially emphasizes that the "privacy, reputational, and due process interests" of "the witnesses and uncharged subjects of the investigation" weigh against disclosure.  See Gov. Mot. at 5.  In particular, it has redacted "detailed information about subjects of the investigation — including information that could identify them, the extent of their cooperation with law enforcement, and their private activities," some of which was drawn from witness interviews and search warrants. Id. at 6.  The Times has already agreed that the information about reporters' sources should not be unsealed.  To the extent that the privacy of other parties is also implicated, it is well recognized that "individuals have an obvious privacy interest . . . in keeping secret the fact that they were subjects of a law enforcement investigation," and this "privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation." Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice, 854 F.3d 675, 682 (D.C. Cir. 2017) (internal citations and quotation marks omitted) (discussing privacy interest in FOIA context).  And when, as here, that investigation has concluded without an indictment, those privacy interests remain.  See Matter of the Application of WP Co. LLC, 201 F. Supp. 3d

10

109, 122 (D.D.C. 2016) ("[C]ourts have been reluctant to recognize even a qualified public right to access to [post-investigation warrant] materials where, as here, an investigation concludes without indictment.").

In addition to privacy interests, the redactions covering subjects of the investigation and witnesses also serve "compelling law enforcement interests" even after the investigation's closure.  See Gov. Mot. at 7.  If the sealed information were released, the Government explains, future investigators would risk losing the "ability to obtain truthful information from subjects or witnesses" since those individuals might not trust that their statements would in fact be kept private.  Id.  Courts in this district have repeatedly recognized the need to protect witness anonymity.  See, e.g., Matter of the Application of WP Co. LLC, 201 F. Supp. 3d at 127 (maintaining secrecy of search warrants given importance of "ensuring that investigators are able [to] obtain information and assistance from individuals with direct knowledge of criminal conduct"); In re Los Angeles Times Commc'ns LLC, No. 21-16, 2021 WL 2143551, at *4 (D.D.C. May 26, 2021), appeal filed, No. 21-5128 (D.C. Cir. June 9, 2021) (addressing importance of witness anonymity in context of First Amendment right of access).  Although the investigation at issue has been discussed in the media, "[t]hese interests are no less great where some of the relevant information has been reported on in the news media . . . particularly where the specific information in the materials has not been disclosed." In re Los Angeles Times Commc'ns LLC, 2021 WL 2143551, at *4.  The need to protect law-enforcement activities and individual privacy both put a thumb on the scales for the Government.

Other redactions are intended to protect classified material.  The Department objects to unsealing information that might reveal or confirm "the precise nature of the classified information that was disclosed in the Times's Article," although the Application itself contains

11

no classified material. See Gov. Mot. at 7. The Application addresses how classified information was discussed with reporters and the classification level of the information. See Redacted App. at 5, 9–14; see also Gov. Mot. at 7. There is no question that "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." Snepp v. United States, 444 U.S. 507, 510 n.3 (1980). The Times counters that the former Director of National Intelligence already "declassified information about the same investigation in October 2020," leaving little need to protect material from an Application filed that December. See Times Reply at 7 n.8. The release that the Times points to does not address the material redacted in the Application, which suggests that a need for secrecy existed in December 2020 and continues now. See ECF No. 16-2 (DOJ-REQ-0000135). This counsels against lifting the redactions. See Dhiab v. Trump, 852 F.3d 1087, 1098 (D.C. Cir. 2017) ("The law of this circuit is that the need to 'guard against risks to national security interests' overcomes a common-law claim for access.") (quoting Hubbard, 650 F.2d at 315–16).

Finally, the Government asserts that other information must stay sealed "to protect against disclosure of grand jury information subject to Federal Rule of Criminal Procedure 6(e)." See Gov. Mot. at 8. Rule 6(e) affords very limited exceptions for the release of grand-jury information, none of which is satisfied here. See Fed. R. Crim P. 6(e)(3); see also In re Leopold, 964 F.3d at 1133 ("That Rule expressly makes secrecy the default and thus displaces the common-law right of access."). Given the strong default of secrecy for grand-jury information, the Court finds that it is appropriate to keep in place redactions relating to such material. These key fourth and fifth factors thus strongly oppose unsealing.

The sixth and final factor is "the purposes for which the documents were introduced during the judicial proceedings." Nat'l Children's Ctr., 98 F.3d at 1409. Under this prong, "[t]he public's entitlement to judicial records is commensurate with the documents' importance to the judicial proceeding in question." Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Ords., 300 F. Supp. 3d 61, 96 (D.D.C. 2018), rev'd on other grounds, 964 F.3d 1121 (D.C. Cir. 2020). The Government submitted the Application to convince the Court to authorize the collection of non-content information about emails sent by and to New York Times journalists. There is no question that Magistrate Judge Faruqui relied on these documents "in his decision." Cf. Hubbard, 650 F.2d at 321 (noting fact that documents were not "expressly relied upon by the trial judge in his decision" as reason for withholding). Although it is not clear from the January 5 Order which material most influenced his decision to issue the Order and whether that material has now been unsealed, it seems likely that at least some of the redacted information might be among that material. As a result, this factor counsels toward release of the information.

In balancing all the factors, therefore, the Government's showing is sufficient to overcome the presumption in favor of disclosure, particularly given that it prevails as to the fourth and fifth factors. In these circumstances, unsealing the bulk of the redactions is not proper.

On one point, however, the Times prevails. It opposes the redaction in the Application and other motions of "the name(s) of the Assistant United States Attorney(s) who were on the papers." Times Reply at 7. The Government recently concluded that "the names of the government attorney(s) need not remain redacted" on docket entries 2–17 in In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for Investigation of

13

Violation of 18 U.S.C. §§ 641 and 793. See Gov. Resp. at 1.  Presumably this conclusion extends also to the Application itself.  In the unlikely event that it does not, the Court still determines that lifting the redaction is proper.

Although little attention has been devoted to the privacy interests and risk of prejudice associated with releasing an attorney's name and office contact information, the limited precedents that exist in similar circumstances suggest that this information should be unsealed.  When considering the privacy interests at stake in disclosing lawyers' names in the context of FOIA Exemption 7(C), which protects personal information in law-enforcement materials, courts have found that the "disclosure of the lawyers' names would not result in an unwarranted invasion of personal privacy" when those lawyers "were not accused of any misconduct[,] they were not witnesses to alleged wrongdoing," and the defense had not indicated they would be personally endangered.  King & Spalding, LLP v. Dep't of Health & Hum. Servs., 395 F. Supp. 3d 116, 122 (D.D.C. 2019) (internal citations and quotation marks omitted); but see Pub. Citizen, Inc. v. Dep't of Educ., 388 F. Supp. 3d 29, 43 (D.D.C. 2019) (allowing withholding of attorney's name in FOIA case when particular lawyer so well known to practice certain kind of law that revealing name would show type of legal services sought).  Here, as the Times notes, "The Government has made no effort to justify redacting these names," Times Reply at 7, and, indeed, the Government has asserted nothing about how releasing the names could endanger law-enforcement activity or officials' personal safety.  Unsealing the names is also consistent with the need for accountability and openness that animates the common-law right of access, and the Court thus orders that these redactions be lifted in all records.

3.  Hubbard *Factors: Other Docket Entries*

Next, the Court turns to how the Hubbard factors apply to the redactions that remain on Attachment A to the January 5 Order and the Motion to Withdraw Application from June 2021. As previously noted, the first set of redactions obscures the full email addresses of the relevant Times journalists. The parties never discuss those redactions in their briefing, which is understandable inasmuch as the Times already has these addresses and would likely seek to protect its journalists from the harassment that might result from releasing the addresses. If the Times wishes to have these redactions lifted, it may so inform the Court.

The second redaction in the Motion to Withdraw Application covers information relating to the underlying investigation in this matter. Although, as noted earlier, that investigation has ceased, the Court finds that it is still appropriate to keep this phrase-long redaction in place for the reasons described for other investigative materials in Section III.A.2 above.

B.  First Amendment Right of Access

Moving on to the First Amendment right of access, courts have traditionally used the "experience and logic" test to determine whether such a right applies. See Press-Enterprise Co. v. Superior Ct. of California for Riverside Cty., 478 U.S. 1, 9 (1986). Under the "experience" prong, a court considers "whether the place and process have historically been open to the press and general public." Id. at 8. Meanwhile, under the "logic" prong, a court asks "whether public access plays a significant positive role in the functioning of the particular process in question." Id. "If the particular proceeding in question" satisfies that test, "a qualified First Amendment right of public access attaches," and "the trial court must determine [at least in a criminal case]

whether the situation is such that the rights of the accused override the qualified First Amendment right of access." Id. at 9.

The D.C. Circuit has not resolved the question of whether the First Amendment right of access applies to a § 2703(d) application. See In re Leopold, 964 F.3d at 1127 (court "avoid[ed] unnecessarily passing on a constitutional question of first impression in this circuit" when it could decide case under common-law right of access). The Times recognizes that it is unlikely that such an application would satisfy the experience prong given the recent vintage of the Stored Communications Act, which was enacted in 1986. See Times Mot. at 18; see also In re Leopold, 300 F. Supp. 3d at 91 (finding "no historical tradition of openness exists as to . . . § 2703(d) materials"). It argues that the Court should nonetheless find that a First Amendment right of access applies under the logic prong, citing an instance in which the right attached to post-investigation warrant materials. See Times Mot. at 18–19; see also In re New York Times Co., 585 F. Supp. 2d 83, 89–90 (D.D.C 2008) (finding First Amendment right of access for warrant materials in investigation after Government identified sole suspect).

The Court need not reach this question, however, because even if it were to determine that the First Amendment right of access attaches, that would not afford the Times the relief it seeks. See Press-Enterprise, 478 U.S. at 14. To overcome that right of access, the Government must show "that the denial [of public access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." Globe Newspaper Co. v. Superior Ct. for Norfolk Cty., 457 U.S. 596, 606–07 (1982). Although the Government offers little on this point beyond the reasons it put forth against unsealing under the common law, the Court finds that both a compelling government interest and narrow tailoring are present here given the risks that

16

exposure of the sealed materials could pose and the limited nature of the remaining redactions. See Gov. Mot. at 9.

When previously considering the potential risks that could arise from disclosure of the redacted material, the Court identified reasons to fear "a substantial probability" of prejudice to compelling government interests, including law-enforcement activities, the privacy of third parties, grand-jury activities, and classified information. See Press-Enterprise, 478 U.S. at 13–14; see also Section III.A.2 supra. The fact that the leak investigation has garnered public attention does not diminish this probability of prejudice. Contrary to an assertion made by the Times, when applying the First Amendment right of access, the D.C. Circuit has not "expressly recognized . . . that the release of information already publicized by the news media cannot threaten an ongoing investigation enough to justify continued sealing of records." Times Mot. at 20 (citing to Washington Post v. Robinson, 935 F.2d 282, 291–92 (D.C. Cir. 1991)). In that case, the Circuit explained that in a particular instance the information in a plea agreement could be unsealed because the basis for it "was already within the public knowledge." Washington Post, 935 F.2d at 291. "[I]n a different case" there might be good reason not to unseal if doing so would "threaten an ongoing criminal investigation" or an individual's personal safety. Id. Here, even though the investigation has closed, risks remain surrounding the disclosure of classified information and protecting subjects and sources. Good reason thus persists to keep the redactions in place as they are needed to effectively ward off the threatened harms from disclosure.

Finally, the Government's release of much of the § 2703(d) Application and associated docket entries evinces a narrowly tailored approach and suggests that no alternative limitation remains to protect the interests involved. See Press-Enterprise, 478 U.S. at 13–14. Indeed, prior

to the partial unsealing, the Times had suggested that to keep the materials sealed, the Government would need to "demonstrate that alternative measures, such as redaction, cannot adequately redress that risk."  See Times Mot. at 21.  The Government has adopted precisely this more limited option and since much of the Application has now been released, no "reasonable alternative[]" to nondisclosure remains that would protect the remaining privacy and security interests.  See Press-Enterprise, 478 U.S. at 14.  Similarly, with respect to docket entries 2–17, the Government has maintained only two minor redactions aimed at protecting the privacy of the Times's journalists themselves and investigative secrecy.  Even if the First Amendment right of access were to attach, therefore, the Court finds that the remaining redactions would be warranted.

### III.   Conclusion

For these reasons, the Court will grant in part and deny in part the Times's Motion for Access to Judicial Records.  It will also order that the Docket be unsealed in In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC for Investigation of Violation of 18 U.S.C. §§ 641 and 793, and that docket entries 2–17 be partially unsealed consistent with the redactions proposed by the Government.  The unredacted versions of those documents will be filed under seal and a redacted version filed on the public docket.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  December 6, 2021